(Nos. 54668, 54679, 54689, 54690 cons.—

THE PEOPLE *ex rel.* WILLIAM J. SCOTT, Attorney General, Appellee, v. COLLEGE HILLS CORPORATION *et al.*, Appellants.

*Opinion filed March 16, 1982.—Rehearing denied May 27, 1982.*

142

UNDERWOOD, J., took no part.

Robert Markowitz and Robert J. Lenz, of Bloomington, for appellants College Hills Corp., Empire Development Co., Washington East Partnership, Lumber Lane, Inc., and Vernon P. Prenzler.

Leon J. Zanoni and G. Michael Prall, of Yoder, Yoder, Zanoni, Flynn, Prall & Willard, of Bloomington, for appellant Phillip E. Baumgart.

Dunn, Brady, Goebel, Ulbrich, Morel, Kombrink & Hundman, of Bloomington (Frank M. Brady, William T. Hundman, and Mark T. Dunn, of counsel), for appellant Richard H. Hundman.

John P. Schwulst, of Arnold, Gesell & Schwulst, of Bloomington, for appellant Carl F. Schwulst, Jr.

Tyrone C. Fahner, Attorney General, of Springfield

(Thomas M. Genovese, Thomas J. DeMay, and Bruce J. Baker, Assistant Attorneys General, of Chicago, of counsel), for appellee.

JUSTICE CLARK delivered the opinion of the court:

On November 8, 1977, the Attorney General filed this civil penalty action in the circuit court of McLean County pursuant to section 7(4) of the Illinois Antitrust Act (Ill. Rev. Stat. 1975, ch. 38, par. 60–7(4)). The complaint charged defendants with various violations of the Act, including price fixing, tying arrangements, and unreasonable restraints of trade in the home-building and the building-material industry in the Bloomington-Normal area.

The named defendants in the complaint were four corporations: College Hills Corporation, Empire Development Company, Lumberlane, Inc., and Complex Development Company; one partnership: Washington East Partnership; and four individuals: Vernon P. Prenzler, Phillip E. Baumgart, Richard H. Hundman, and Carl F. Schwulst. On January 30, 1978, an order was entered in the circuit court dismissing defendant Complex Development Company on the ground that the company had dissolved or merged with defendant College Hills Corporation. All of the four individual defendants are identified as the chief operating officers and directors of defendant College Hills Corporation. Defendants Prenzler, Baumgart, Hundman and Schwulst are also alleged to be the chief operating officers and directors of defendant Empire Development Company, as well as partners in defendant Washington East Partnership. Lumberlane, Inc., is not made a defendant in count I of the complaint but is charged as a defendant in count II. Defendants Prenzler, Baumgart, Hundman, and Schwulst are identified as officers and directors of Lumberlane, Inc.: Vernon Prenzler, president; Phillip Baumgart, vice-president; Richard Hundman, treasurer;

Carl Schwulst, secretary.

On August 15, 1978, after a number of motions on the pleadings, an order was entered in the circuit court compelling the plaintiff to file a bill of particulars. The bill was filed on August 24, 1978. The defendants subsequently filed motions to dismiss. On August 7, 1979, the circuit court struck the complaint with leave to amend within 21 days. The first amended complaint was filed August 28, 1979. The defendants named in the amended complaint are identical to those named in the first complaint, with the exception of Complex Development Company, which had been deleted.

Count I of the amended complaint alleges that the four individual defendants combined through various joint ventures to fix the price of real estate lots in the Bloomington-Normal area. Count II alleges that certain of the defendants' business practices unreasonably restrained trade in the sale of lots and building materials. Count III alleges that the defendants unlawfully conditioned the sale of residential lots upon the purchase of building materials. On March 25, 1980, an order was entered dismissing the amended complaint with prejudice.

The appellate court reversed the dismissal of counts I and II, indicating that both counts stated a cause of action with sufficient specificity. The appellate court affirmed the dismissal of count III for failure to plead that the tying arrangements alleged had a requisite substantial effect upon commerce. 92 Ill. App. 3d 651.

We granted leave to appeal. The defendants seek reversal of the appellate court's decision which determined that the pleading of counts I and II was sufficient. The People did not appeal the dismissal of count III to this court. The defendants, however, contend that the appellate court dismissed count III for the wrong reasons and have requested us to review the grounds for dismissal of count III.

The pleadings of any complaint must conform to section 42(2) of the Civil Practice Act, which states:

"No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he is called upon to meet." (Ill. Rev. Stat. 1977, ch. 110, par. 42(2).)

Pleadings are not intended to create obstacles of a technical nature to prevent reaching the merits of a case at trial. Their purpose is to facilitate the resolution of real and substantial controversies. (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 307-08.) In determining whether the complaint is adequate, pleadings are liberally construed. The aim is to see substantial justice done between the parties. (Ill. Rev. Stat. 1977, ch. 110, par. 33(3); *First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1; *Stenwall v. Bergstrom* (1947), 398 Ill. 377.) To see if a cause of action has been stated the whole complaint must be considered, rather than taking a myopic view of a disconnected part. *Stenwall v. Bergstrom* (1947), 398 Ill. 377.

While notice pleading prevails under the Federal rules (*Conley v. Gibson* (1957), 355 U.S. 41, 2 L. Ed. 2d 80, 78 S. Ct. 99), a civil complaint in Illinois is required to plead the ultimate facts which give rise to the cause of action (*Board of Education v. Kankakee Federation of Teachers Local No. 886* (1970), 46 Ill. 2d 439, 446-47, *cert. denied* (1971), 403 U.S. 904, 29 L. Ed. 2d 679, 91 S. Ct. 2203; *Levinson v. Home Bank & Trust Co.* (1929), 337 Ill. 241, 244).

We are concerned here only with the specificity of the allegations. The allegations are sufficiently specific if they reasonably inform the defendants by factually setting forth the elements necessary to state a cause of action. *Fanning v. LeMay* (1967), 38 Ill. 2d 209, 211.

Conspiracies by their very nature do not permit plaintiffs to allege all the details of the defendants' conduct.

Such actions are often purposefully shrouded in mystery. This is particularly true in reviewing antitrust conspiracies. The litigation is complex, the issues are often subtle, and the alleged actions carefully camouflaged.

While we recognize the distinction between factual pleading necessary in our own courts and the notice pleading requirements of Federal courts, Federal precedent is both relevant and helpful in determining the adequacy of antitrust allegations. (See *People v. Crawford Distributing Co.* (1972), 53 Ill. 2d 332, 346; *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 309; Ill. Rev. Stat. 1977, ch. 38, par. 60–11.) Conspiracies often have to be proved from inferences drawn from circumstantial evidence. (*United States v. Parke, Davis & Co.* (1960), 362 U.S. 29, 44, 4 L. Ed. 2d 505, 515, 80 S. Ct. 503, 511.) In upholding the government's complaint in *Brett v. First Federal Savings & Loan Association* (5th Cir. 1972), 461 F.2d 1155, 1158, the Court of Appeals for the Fifth Circuit said:

> "Although plaintiffs may be unable to allege specific facts proving actual acts of agreement or conspiracy, the pleadings are sufficient if they set forth facts from which an inference of an unlawful agreement can be drawn. Actual agreements are seldom capable of proof by direct testimony and thus circumstantial evidence may be allowed to establish an alleged conspiracy. [Citations.] Plaintiffs cannot be required to plead with specificity the very facts which can only be proven by circumstantial evidence."

The exact role of a particular defendant cannot always be spelled out in the complaint. In denying a motion to dismiss and a motion for a bill of particulars the district court in *United States v. Johns-Manville* (N.D. Ill. 1941), 67 F. Supp. 291, 293, observed:

> "[I] t must be remembered that the existence of a

combination to restrain trade such as charged here can seldom be proved by the evidence of witnesses to the effect that the parties have entered into a specific, oral or written agreement for that purpose. The proof usually consists of evidence of circumstances from which that conclusion follows."

Defendants' contention that the criminal antitrust indictment that was the subject of *People v. Crawford Distributing Co.* (1972), 53 Ill. 2d 332, requires a lesser standard of pleading than section 42(2) of the Civil Practice Act was disposed of in *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 311. The indictment in *Crawford* alleged that the conspirators held periodic meetings to plan and carry out a conspiracy to increase and fix the price of beer sold at wholesale by defendant distributors to retailers located in Macon County. (53 Ill. 2d 332, 347.) In *Carriage Way West* we held the terms of the civil antitrust complaint at issue there to be sufficient. We said:

"If an indictment of this type satisfies the more rigid procedural requirements of a criminal prosecution, a complaint similarly worded should satisfy the requirements of the Civil Practice Act." 88 Ill. 2d 300, 311.

### Count I

Count I charges the defendants with price fixing in violation of section 3(1)(a) of the Illinois Antitrust Act. Section 3(1)(a) provides:

"Every person shall be deemed to have committed a violation of this Act who shall:

(1) Make any contract with, or engage in any combination or conspiracy with, any other person who is, or but for a prior agreement would be, a competitor of such person:

a. for the purpose or with the effect of fixing, controlling, or maintaining the price or rate charged for any commodity sold or bought by the

parties thereto, or the fee charged or paid for any service performed or received by the parties thereto; ***." Ill. Rev. Stat. 1979, ch. 38, par. 60—3(1)(a).

After identifying and describing the various named defendants the complaint purports to allege how the defendants effectuated their plan to fix prices. The individual defendants combined to form the defendant joint ventures. The joint ventures acquired and developed land and then transferred the developed lots to the individual defendants, who in turn sold these lots to the general public through their respective businesses at previously agreed upon prices. Paragraphs 33, 34, 35, and 36 of count I of the complaint allege:

"33. The individual defendants, through the building material and home building businesses described above, were competitors in the building material and home building industry at the time defendants COLLEGE HILLS CORPORATION, EMPIRE DEVELOPMENT COMPANY and WASHINGTON EAST PARTNERSHIP were formed.

34. The individual defendants formed COLLEGE HILLS CORPORATION, EMPIRE DEVELOPMENT COMPANY and WASHINGTON EAST PARTNERSHIP as joint ventures with the effect of eliminating price competition between competitors on the sale of developed lots zoned for the construction of either single family or two family dwellings in Bloomington-Normal.

35. The individual defendants purchased lots from the joint ventures and resold them to ultimate home owners and home building contractors at prices fixed and determined between competitors.

36. In furtherance of the aforesaid illegal combination, conspiracy, and agreement, the defendants PRENZLER, BAUMGART, HUNDMAN and SCHWULST agreed to fix, control and maintain the prices to be charged to purchasers of the following lots zoned for the construction of either single family or two family dwellings in Bloomington-Normal: ***."

These paragraphs set forth the ultimate facts with sufficient specificity to reasonably inform the named defend-

ants of the charges against them. Subparagraphs 1 through 9 of paragraph 36 go on to describe specific lots sold on specific dates.

The defendants have been identified, their alleged conspiracy has been explained, and the relevant lots and dates have been disclosed. The definitions of the complaint are quite intelligible and more than adequate. As an example of a fatally defective definition the defendants point to the definition of "home building contractor" in paragraph 3(c) of count I. It reads:

> " 'Home building contractor' means any business entity or individual who finances, supervises and manages the construction, *procurement and* phases of any new dwelling." (Emphasis added.)

Two words are simply transposed, and the plaintiff has already indicated as much in response to defendants' motions to dismiss in the circuit court. The corrected definition of an "individual who \*\*\* manages the construction and procurement phases of any new dwelling" is the only plausible one. The complaint, contrary to the defendants' assertions, is not fraught with such errors.

The defendants claim they are confused as to whether they are charged as individuals with personal liability or the businesses with which they are associated are charged with liability. Each of the individual defendants is identified in count I (paragraphs 12 through 29) as an officer of a separate home-building and building-material business. The alignment is: Vernon Prenzler, president of Corn Belt Builders, Inc.; Phillip Baumgart, president of Bloomington Home Service, Inc.; Richard Hundman, president of Hundman Oil & Lumber Co., Inc.; Carl Schwulst, president of Schwulst Building Center, Inc. Count I of the complaint alleges that the individual defendants formed joint ventures (College Hills Corporation, Empire Development Company, Washington East Partnership). The joint ventures allegedly acquired, developed and divided the land

and agreed upon the retail prices to be charged for each lot. The developed lots were then transferred to the individual defendants, who, acting through their respective home-building and building-material businesses, sold the lots at previously agreed-upon prices. The individual defendants' building-material and home-building businesses are not named as defendants. It is the individuals as well as the corporate and partnership joint ventures that are the named parties to the alleged price-fixing agreements.

Defendants maintain that the conduct alleged in count I of the amended complaint does not constitute a *per se* violation under section 3(1)(a) of the Illinois Antitrust Act. Section 3(1)(a) is patterned after section 1 of the Sherman Act (Ill. Ann. Stat., ch. 38, par. 60—3, Historical and Practice Notes, at 455 (Smith-Hurd 1977)), and in our construction of the Illinois Antitrust Act we are guided by Federal case law construing analogous provisions of Federal legislation (Ill. Rev. Stat. 1977, ch. 38, par. 60—11).

One possible construction of section 1 of the Sherman Act would have rendered any commercial contract violative of the Act. (*Chicago Board of Trade v. United States* (1918), 246 U.S. 231, 238, 62 L. Ed. 683, 687, 38 S. Ct. 242, 244.) In place of that kind of doctrinaire analysis, most business combinations are analyzed under a "rule of reason approach" in determining whether a violation of section 1 of the Sherman Act has occurred. (*Standard Oil Co. v. United States* (1911), 221 U.S. 1, 55 L. Ed. 619, 31 S. Ct. 502.) However, there remain some restraints that are considered *per se* violations without consideration of their reasonableness. (*United States v. Topco Associates, Inc.* (1972), 405 U.S. 596, 607, 31 L. Ed. 2d 515, 525, 92 S. Ct. 1126, 1133.) In *Northern Pacific R.R. Co. v. United States* (1958), 356 U.S. 1, 5, 2 L. Ed. 2d 545, 549, 78 S. Ct. 514, 518, the United States Supreme Court described the necessity of *per se* rules. The court said:

"[T] here are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use. This principle of *per se* unreasonableness not only makes the type of restraints which are proscribed by the Sherman Act more certain to the benefit of everyone concerned, but it also avoids the necessity for an incredibly complicated and prolonged economic investigation into the entire history of the industry involved, as well as related industries, in an effort to determine at large whether a particular restraint has been unreasonable—an inquiry so often wholly fruitless when undertaken."

A classic example of a restraint that is considered a *per se* violation is a "horizontal" restraint fixing prices or dividing markets—that is, an agreement between competitors at the same level of the market structure to accomplish these results. (*United States v. Topco Associates, Inc.* (1972), 405 U.S. 596, 608, 31 L. Ed. 2d 515, 526, 92 S. Ct. 1126, 1133.) The United States Supreme Court has consistently and without deviation adhered to the principle that price-fixing agreements are unlawful *per se.* (*United States v. Socony-Vacuum Oil Co.* (1940), 310 U.S. 150, 218, 84 L. Ed. 1129, 1165, 60 S. Ct. 811, 842.) The anticompetitive nature and effect of price fixing is "so apparent and so serious that the courts will not pause to assess them in light of the rule of reason." *United States v. Sealy, Inc.* (1967), 388 U.S. 350, 355, 18 L. Ed. 2d 1238, 1243, 87 S. Ct. 1847, 1851.

The anticompetitive effect of the price-fixing activities charged in count I is alleged in paragraph 38. Paragraph 38 states:

"(1) [T]he prices of lots have been fixed at artificial, noncompetitive levels,

(2) the supply of lots has been restrained,

(3) the purchasers of the lots have been deprived of free and open competition,

(4) home building contractors have been restrained in their business,

(5) competition between and among defendants has been suppressed."

While the United States Supreme Court has indicated that joint ventures are not to be construed as unlawful price-fixing schemes where "the agreement on price is necessary to market the product at all" (*Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.* (1979), 441 U.S. 1, 23, 60 L. Ed. 2d 1, 18-19, 99 S. Ct. 1551, 1564), the alleged conspiracy at hand cannot be conceived of as one of those agreements.

The defendants call the court's attention to one Federal court's holding that restraints on trade are not analyzed under the *per se* test where the conduct is sub-servient to a legitimate transaction. However, that opinion went on to say that any ancillary restraint must be reasonably necessary to the legitimate primary purpose of the challenged conduct and of no broader scope than is reasonably necessary. *United States v. Columbia Pictures Corp.* (S.D.N.Y. 1960), 189 F. Supp. 153, 178.

The fixing of prices of lots to be sold by the otherwise competing individual defendants, Prenzler, Baumgart, Hundman, and Schwulst, through their respective businesses, Corn Belt Builders, Inc., Bloomington Home Services, Inc., Baumgart Building Center, Inc., Hundman Oil & Lumber Co., and Schwulst Building Center, Inc., is not subservient to the acquisition and sale of land by the joint ventures (College Hills Corporation, Empire Development Company, and Washington East Partnership) to which the individual defendants were parties.

The defendants rely upon *Broadcast Music, Inc. v.*

*Columbia Broadcasting System Inc.* (1979), 441 U.S. 1, 60 L. Ed. 2d 1, 99 S. Ct. 1551, for support that the joint ventures are immunized by the doctrine of ancillary restraints. However, the Supreme Court in *Broadcast Music* pointed out that the action was *sui generis,* as it brought to the court's attention issues combining considerations of antitrust law and copyright law in examining performing rights in the music industry. In *United States v. Motor Carriers Rate Conference, Inc.* (N.D. Ga. 1979), 2 Trade Reg. Rep. (CCH), par. 69,931, at 79,325-26, a Federal district court recognized that the decision in *Broadcast Music* "is a careful limited analysis of a single industry, containing not even the slightest hint that similar considerations govern in other unrelated fields."

The *per se* analysis triggered by an alleged price-fixing conspiracy is applicable here. While the plaintiff does not delineate the co-conspirators' roles with the utmost specificity, count I does sufficiently allege the essential elements needed to withstand this motion to dismiss. We affirm the appellate court's judgment as to count I.

### Count II

Count II of the amended complaint alleges an unreasonable restraint of trade in violation of section 3(2) of the Act (Ill. Rev. Stat. 1977, ch. 38, par. 60—3(2)). It provides:

> "Sec. 3. Every person shall be deemed to have committed a violation of this Act who shall:
>
> \* \* \*
>
> (2) By contract, combination, or conspiracy with one or more other persons unreasonably restrain trade or commerce."

Again we note that cases decided under the ambit of section 1 of the Sherman Act provide guidance when construing section 3(2) in view of section 11 of the Illinois Antitrust Act (Ill. Ann. Stat., ch. 38, par. 60—3, Historical and Practice Notes, at 458 (Smith-Hurd 1977); Ill. Rev. Stat. 1977, ch. 38, par. 60—11). Both plaintiff and defend-

ants agree that the analysis required is the so called "rule of reason" test. (Ill. Ann. Stat., ch. 38, par. 60—3, Historical and Practice Notes, at 460 (Smith-Hurd 1977); *Havoco of America, Ltd. v. Shell Oil Co.* (7th Cir. 1980), 626 F.2d 549; *Evanston Motor Co. v. Mid-Southern Toyota Distributors, Inc.* (N.D. Ill. 1977), 436 F. Supp. 1370; *Standard Oil Co. v. United States* (1911), 221 U.S. 1, 55 L. Ed. 619, 31 S. Ct. 502.) The court in *Havoco* explained:

> "The rule [of reason] does not exempt restraints which may be argued to be reasonable or expedient, but rather focuses on the reasonableness of the effect of the challenged restraint on competition. [Citation.] An examination of the legality of any conduct alleged to be anticompetitive therefore necessitates a determination as to what the consequences of the conduct have been in the affected market." 626 F.2d 549, 554.

The plaintiff must allege that a conspiracy in fact existed and that the conspiracy unreasonably restrained trade. (*Aviation Specialties, Inc. v. United Technologies Corp.* (5th Cir. 1978), 568 F.2d 1186, 1191-92, citing *Standard Oil Co. v. United States* (1911), 221 U.S. 1, 55 L. Ed. 619, 31 S. Ct. 502; *Metal Lubricants Co. v. Engineered Lubricants Co.* (8th Cir. 1969), 411 F.2d 426, 430.) In paragraph 47 of count II, the plaintiff alleges that such an illegal conspiracy exists. In paragraph 48 the purpose of the conspiracy is set forth:

> "48. The aforesaid illegal combination and conspiracy between the defendants has been:
>
> A) To control and restrict competition in the sale of developed lots zoned for the construction of new single family dwellings in Bloomington-Normal;
>
> B) to limit and restrict competition between and among defendants and other entities engaged in the sale of building materials in Bloomington-Normal; and
>
> C) to control and restrict competition in the building and sale of new single family dwellings in Bloomington-Normal."

Count II alleges one single conspiracy in restraint of trade which constitutes a continuing offense that manifests itself in three different ways and not three separate conspiracies as the defendants suggest. Paragraphs 49 through 51 describe in detail what the defendants did in furtherance of the conspiracy.

The anticompetitive effects of the alleged conspiracy are described in paragraph 52 of the amended complaint:

"A) Purchasers of new single family dwellings in Bloomington-Normal have been deprived the benefits of free and open competition;

B) Prices of new single family homes sold in Bloomington-Normal have been inflated to artificial and non-competitive levels.

C) Competition in the construction of new single family dwellings in Bloomington-Normal has been restrained and suppressed;

D) Competition in the sale of building materials in Bloomington-Normal has been restrained and suppressed."

We need not reiterate our previous discussion of proper pleading standards under the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 33 *et seq.*). Count II details the defendants' steps taken to restrain trade in lots, building materials, and new single-family dwellings. Count II is not subject to dismissal for failure to allege ultimate facts. The essential elements of the purported conspiracy and its anticompetitive effects under section 3(2) of the Illinois Antitrust Act are sufficiently alleged.

The question of whether the defendants' conduct was reasonable is a material question of fact. (*Norfolk Monument Co. v. Woodlawn Memorial Gardens, Inc.* (1969), 394 U.S. 700, 703, 22 L. Ed. 2d 658, 662, 89 S. Ct. 1391, 1393. See also *Continental T. V., Inc. v. GTE Sylvania, Inc.* (1977), 433 U.S. 36, 49, 53 L. Ed. 2d 568, 580, 97 S. Ct. 2549, 2557; *Berkey Photo, Inc. v. Eastman Kodak Co.* (2d Cir. 1979), 603 F.2d 263, 304, *cert. denied* (1980), 444 U.S. 1093, 62 L. Ed. 2d 783, 100 S. Ct. 1061;

*Lamb Enterprises, Inc. v. Toledo Blade Co.* (6th Cir. 1972), 461 F.2d 506, 517; *Paramount Film Distributing Corp. v. Village Theatre, Inc.* (10th Cir. 1955), 228 F.2d 721, 726.) And where the purported conspiracy has not been "conclusively disproved by pretrial discovery" and there remain "material issues of fact," the United States Supreme Court has cautioned against the use of summary procedures like the dismissal ordered by the circuit court here; any summary disposition " 'should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot.' " (*Norfolk Monument Co. v. Woodlawn Memorial Gardens, Inc.* (1969), 394 U.S. 700, 704, 22 L. Ed. 2d 658, 662, 89 S. Ct. 1391, 1393 (reversing a district court's summary disposition), quoting *Poller v. Columbia Broadcasting System, Inc.* (1962), 368 U.S. 464, 473, 7 L. Ed. 2d 458, 464, 82 S. Ct. 486, 491.

In dismissing count II the trial court said that equating the relevant market with the corporate boundaries of the Bloomington-Normal area is "patently ridiculous." The appellate court ruled that alleging the Bloomington-Normal area to be the relevant market area was not fatal to count II. We agree.

The determination of the relevant geographic market is seldom made at the pleading stage. (*United States v. E. I. du Pont de Nemours & Co.* (1957), 353 U.S. 586, 1 L. Ed. 2d 1057, 77 S. Ct. 872; *Columbia Metal Culvert Co. v. Kaiser Aluminum & Chemical Corp.* (3d Cir. 1978), 579 F.2d 20; *Cackling Acres, Inc. v. Olson Farms, Inc.* (10th Cir. 1976), 541 F.2d 242, *cert. denied* (1977), 429 U.S. 1122, 51 L. Ed. 2d 572, 97 S. Ct. 1158.) In *Brown Shoe Co. v. United States* (1962), 370 U.S. 294, 336-37, 8 L. Ed. 2d 510, 542, 82 S. Ct. 1502, 1530, the United States Supreme Court said that a "geographic market selected must *** both 'correspond to the com-

mercial realities' of the industry and be economically significant." And when a product is considered sufficiently unique, a relevant submarket within a broader market may be an appropriate economic entity, itself, by which to measure an alleged restraint of trade for antitrust purposes. (See *International Boxing Club v. United States* (1959), 358 U.S. 242, 3 L. Ed. 2d 270, 79 S. Ct. 245; *United States v. Grinnell Corp.* (1966), 384 U.S. 563, 572, 16 L. Ed. 2d 778, 787, 86 S. Ct. 1698, 1704.) We do not find the relevant market as defined by the State to be "transparently false" as the defendants assert. We, however, are not in a position to gauge the commercial reality and economic significance of the alleged relevant geographic market; conclusions should be drawn only after a thorough examination and careful consideration of the facts.

## Count III

While defendants agree that count III was properly dismissed, they claim that the appellate court incorrectly determined what needs to be alleged in asserting the existence of a tying violation (a seller agrees to sell a particular product (the tying product) only on the condition that the purchaser agrees to buy another item (the tied product)) under section 3(4) of the Illinois Antitrust Act (Ill. Rev. Stat. 1977, ch. 38, par. 60–3(4)). *People ex rel. Scott v. Schwulst Building Center, Inc.* (1982), 89 Ill. 2d 365, addressed this issue. In view of our decision in *Schwulst*, we need not discuss it in detail here. A violation under section 3(4) of the Act occurs if it is shown that the seller has sufficient economic power in the tying product or if a substantial amount of commerce in the tied product is restrained. *People ex rel. Scott v. Schwulst Building Center, Inc.* (1982), 89 Ill. 2d 365, 377.

Counts I and II of the amended complaint are sufficiently specific. The circuit court's dismissal with prejudice was unwarranted. A cause of action should not be dismissed with prejudice unless it clearly appears that no set

of facts can be proved which would entitle the plaintiff to relief. *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 305.

We affirm the appellate court's holding that counts I and II of the amended complaint were improperly dismissed. The cause is remanded to the circuit court of McLean County for further proceedings consistent with this opinion.

*Affirmed and remanded.*

JUSTICE UNDERWOOD took no part in the consideration or decision of this case.