ANIXTER BROTHERS, INC., d/b/a Anixter Communications Systems, Plaintiff-Appellee, *v.* CENTRAL STEEL & WIRE COMPANY, Defendant and Third-Party Plaintiff-Appellant (Bridgeport Brass Company, Third-Party Defendant-Appellee).

First District (3rd Division)   No. 81—2425

Opinion filed May 2, 1984.

Jerome H. Torshen, Ltd., and Garretson and Santora, both of Chicago (Jerome H. Torshen, Abigail K. Spreyer, and Janet F. Gerske, of counsel), for appellant.

Rothschild, Barry & Myers, of Chicago (Norman J. Barry, Melvin I. Mishkin, and Michael J. Wall, of counsel), for appellee Bridgeport Brass Co.

PRESIDING JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Anixter Brothers, Inc., brought an action against defendant, Central Steel & Wire Company, to recover damages resulting from defective brass tubing. In turn, Central brought a third-party action against third-party defendant Bridgeport Brass Company. Bridgeport filed a motion to dismiss Central's amended third-party complaint, which was allowed. Central appeals from the dismissal order. We affirm the dismissal of counts 1 and 2 of the amended third-party complaint, reverse the dismissal of counts 3 and 4, and remand.

Anixter manufactures and sells microwave antennas which contain brass tubing as a component part. Central is in the business of selling

metal products, including brass tubing. Bridgeport is in the business of manufacturing brass tubing.

Central received a number of purchase orders from Anixter for brass tubing, and it then ordered brass tubing from Bridgeport to fill Anixter's purchase orders. After receiving the tubing from Central, Anixter incorporated the tubing into microwave antenna systems which were sold to its customers.

There was no written contractual indemnity agreement between Bridgeport and Central. However, in the written purchase orders between Bridgeport and Central, Bridgeport expressly warranted that the tubing would have the "minimum label analysis reflected on labels" and "that we have used that degree of care general in our normal manufacturing process, and make no other warranty." In the written purchase orders between Central and Anixter, Central expressly warranted that the tubing would be "of good material and workmanship, and free from defect."

According to the allegations in the amended third-party complaint, after the microwave antennas were sold by Anixter to its customers, the tubing proved to be defectively manufactured, causing the microwave antenna assemblies to crack. As a result, claims for damages were made against Anixter. Anixter then filed an action against Central, seeking to recover damages for the replacement of the tubing and microwave antennas, together with the resulting loss of business, consulting fees, and loss of its overhead and employees' time. The complaint contained two counts. Count 1 alleged a breach of warranty and count 2 alleged a breach of contract. Central tendered the defense of Anixter's suit to Bridgeport, which was refused. Central then filed this third-party action against Bridgeport.

Central's amended third-party complaint consists of four counts, each of which seeks indemnity only. Count 1 is based on a breach of warranty. In count 1, Central alleges that if it breached its warranty to Anixter, it is because Bridgeport breached its warranty to Central. Count 2 is based on breach of contract. In count 2, Central alleges that if Central breached its contract with Anixter, it is because Bridgeport breached its contract with Central. Count 3 seeks indemnity from Bridgeport based on Bridgeport's negligence, and count 4 seeks indemnity from Bridgeport based on product strict liability.

■ We first address the issue of whether the amended third-party complaint states contract and warranty actions for indemnity. Since there was no contractual indemnification agreement between Bridgeport and Central, and the warranties between Bridgeport and Central were not the same as the warranties between Central and

Anixter,[1] we conclude that the amended third-party complaint does not state a contract or warranty action for indemnity. Accordingly, we hold that the trial court properly dismissed counts 1 and 2 of the amended third-party complaint.

■ We next address Bridgeport's contention that counts 3 and 4 of the amended third-party complaint are barred under *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443. We disagree with Bridgeport's contention. Bridgeport argues that *Moorman* is controlling here because this case involves solely economic loss.[2] In our view, we need not decide whether this case involves solely economic loss because this case is controlled by *Maxfield v. Simmons* (1983), 96 Ill. 2d 81, 449 N.E.2d 110, rather than *Moorman*.

In *Moorman*, the court stated that the law of sales has been carefully articulated to govern the economic relations between suppliers and consumers of goods, and that to allow tort theories of recovery for economic loss in that context would eviscerate the warranty sections of the Uniform Commercial Code (UCC). (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 78-79, 435 N.E.2d 443, 447.) Recently, in *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 155-57, 449 N.E.2d 125, 127-28, the court referred to *Moorman* and held that economic losses

---

[1]We have not found any Illinois case which sufficiently discusses the principles involved in a warranty action for indemnity. However, in *Liberty Mutual Insurance Co. v. J.R. Clark Co.* (1983), 239 Minn. 511, 518, 59 N.W.2d 899, 904, the Supreme Court of Minnesota states: "Where personal property is purchased for resale and subsequently resold by the purchaser *with warranties identical to those given him by his seller*, damages recovered against the purchaser by the subpurchaser for breach of the warranties may in turn be recovered by such purchaser from the original seller, provided the damages sustained reasonably may have been expected to follow a breach of such warranties. *London Guar. & Acc. Co. Ltd. v. Strait Scale Co.*, 322 Mo. 502, 15 S.W.2d 766, 64 A.L.R. 936; 46 Am. Jur., Sales, sec. 748. The original seller's liability in relation thereto extends to damages *** proximately caused by breach of the warranties." (Emphasis added.) As for the procedure for vouching-in the original seller if the warranties in the two sales are the same, see Ill. Rev. Stat. 1983, ch. 26, par. 2—607(5)(a). Also see *Uniroyal, Inc. v. Chambers Gasket & Manufacturing Co.* (Ind. 1978), 380 N.E.2d 571, 579-80.

[2]In *Moorman*, the court held: "Our conclusion that qualitative defects are best handled by contract, rather than tort, law applies whether the tort theory involved is strict liability or negligence. Tort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence of the nature described above. The remedy for economic loss, loss relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause, on the other hand, lies in contract." 91 Ill. 2d 69, 86, 435 N.E.2d 443, 450.

resulting from failure to construct certain buildings in a workmanlike manner were not recoverable under a negligence theory.[3] However, nine days before *Foxcroft* was decided, the court decided *Maxfield*. In *Maxfield*, th court held that the recognition of tort recovery in an implied contract of indemnity action would not eviscerate the provisions of the UCC and that *Moorman* does not control an implied contract of indemnity action.[4]

---

[3]*Moorman* was also discussed and followed in *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 234. In *Redarowicz*, on the authority of *Moorman*, the court held that economic losses resulting from latent construction defects are not recoverable under a negligence theory. More recently, the supreme court granted leave to appeal in a case where the appellate court stated: "In the case at bar, there is no claim for personal injury or property damage to anything other than the defective product itself. However, the authorities cited in the *Moorman* case do not consider this a bar to tort recovery. A correct interpretation of *Moorman* shows that 'economic loss' as used in that opinion does not mean simply monetary damages. Rather the idea of 'economic loss' in *Moorman* is closely allied to the contract concept of loss of benefit of bargain." (*Vaughn v General Motors Corp.* (1983), 118 Ill. App. 3d 201, 204, 454 N.E.2d 740, 742, *appeal allowed* (1983), 96 Ill. 2d 566.) In another case where leave to appeal is pending (Docket No. 59817), the court stated: "A threshold issue, common to both appeals, is whether the Ferentchaks' causes of action against each defendant, sounding in negligence, are barred by the decisions of the Illinois Supreme Court in *Moorman* *** and *Redarowicz* ***. We conclude that the plaintiffs' tort actions against the village and against the architect were not barred by the decisions of the court in *Moorman* and *Redarowicz*. As against these defendants, the plaintiffs suffered economic losses for which *Moorman* does not bar tort recovery." *Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599, 604-08, 459 N.E.2d 1085, 1089, 1092. Also see *Rosos Litho Supply Corp. v. Hansen* (1984), 123 Ill. App. 3d 290, leave to appeal not yet filed, where the court discussed *Moorman* and held that the rule prohibiting the recovery of economic damages in tort does not apply to the professional malpractice liability of an architect.

[4]In *Maxfield*, the court stated: "We do not view *Moorman* as controlling here. In *Moorman*, this court noted that 'the law of sales has been carefully articulated to govern the economic relations between suppliers and consumers of goods.' [Citation.] The court stated that to adopt strict liability in tort for economic loss would effectively eviscerate section 2—316 of the Uniform Commercial Code ***. [Citation.] Consistent with the Code's intent to permit the parties to commercial transactions to provide by agreement for their respective rights and obligations [citations], we refused, in *Moorman*, by rejecting a cause of action for products liability where only economic injuries were involved, to preclude contracting parties pursuant to section 2—316 from excluding or modifying warranties as they saw fit. Here, the recognition of a cause of action for indemnity does not defeat the purpose of the four-year statute of limitations contained in section 2—725. A single transaction or occurrence, such as an injury caused by a defective product, will typically present the possibility of causes of action sounding in implied warranty, express warranty, negligence, and strict liability. Section 2—725 controls in causes of action based on contract principles, but not in those causes of action based on tort principles. A recognition of this implied right of indemnity does not 'eviscerate' the UCC's statute of limitations contained in section

Here, when we consider the alleged cause of Central's damages and the relative positions of the parties to the amended third-party complaint, it is clear that the harm alleged in Central's amended third-party complaint is from a third party's use of the product, and that the third party was not a party to the contract between Bridgeport and Central. Thus, this case involves an implied contract of indemnity action. It follows that this case is controlled by *Maxfield*. *Moorman* is simply not applicable. See *Maxfield v. Simmons* (1983), 96 Ill. 2d 81, 85-86, 449 N.E.2d 110, 111-12.

The operative facts in this case are analogous to the operative facts in *Maxfield*. In *Maxfield*, the court analogized the facts in that case to those found in a product liability case in which the assembler of a completed product brings an implied contract of indemnity action against a manufacturer of a component part. The court noted that under the latter circumstances, it has held that the assembler of a finished product may recover in an implied contract of indemnity action. The court referred to *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 338 N.E.2d 857.

In the present case, the amended third-party complaint alleges acts by Bridgeport that are sufficient to give rise to the right of indemnification in that it was the tortious conduct of Bridgeport or an unreasonably dangerous condition of the product manufactured by Bridgeport that caused the damages. The implied contract of indemnity arose from the relationship between the parties, but the liability, if any, that is imposed on Bridgeport will be the result not of breach of contract, but of tortious conduct on the part of Bridgeport or of an unreasonably dangerous condition of the product manufactured by Bridgeport. Thus, the indemnity here is no different from the indemnity involved in any other product liability case, and there is no more reason to dismiss the amended third-party complaint in this case than there would be to dismiss a third-party complaint for indemnity in any other product liability case. It follows that if we were to hold that the existence of Central's third-party cause of action in implied contract of indemnity is barred in this case, we would be consciously disregarding *Maxfield* and shunting a whole body of established Illinois law on implied contract of indemnity actions. We therefore hold that the

2—725, since it has no application to the indemnity cause of action. Where no section of the Code purports to control an issue, section 1—103 (Ill. Rev. Stat. 1979, ch. 26, par. 1—103) provides that the principles of law and equity shall apply to supplement the provisions of the Code. Thus, by the Code's own mandate, we are not precluded from recognizing Simmons' implied right of indemnity against DeNeal." *Maxfield v. Simmons* (1983), 96 Ill. 2d 81, 85-86, 449 N.E.2d 110, 111-12.

action is not barred.

■ We next address the question of whether Central's cause of action for implied contract of indemnity is barred by the four-year limitation period in the UCC for bringing an action. (See Ill. Rev. Stat. 1983, ch. 26, par. 2—725(1).) Although the relationship between Central and Bridgeport may have arisen as the result of a contract, an implied contract of indemnity action is not a contract action. Except to establish the relationship between the parties, contract principles of law are not involved. Thus, the period of limitation for bringing an action under the UCC is not applicable. See *Maxfield v. Simmons* (1983), 96 Ill. 2d 81, 85-86, 449 N.E.2d 110, 111-12.

Under Illinois law, a defendant entitled to bring an implied contract of indemnity action has a choice of filing a third-party complaint against a party who may be liable to indemnify him as a part of the original action (Ill. Rev. Stat. 1983, ch. 110, par. 2—406(b)), or of waiting until the original action is over and filing a separate action for indemnity if he is found liable. In effect, Illinois law allows the third-party indemnity claim to be filed before it accrues, in order to promote settlement of all claims in one action. The third-party claim cannot be determined, however, before the underlying claim establishing liability and damages is determined. It follows that the cause of action for an implied contract of indemnity does not accrue until the defendant has a judgment entered against him or until he settles the claim made against him. Only at that point does the cause of action for indemnity accrue and the statute of limitations begin to run. The statute of limitations for an implied contract of indemnity action is the general five-year statute for "all civil actions not otherwise provided for." (Ill. Rev. Stat. 1983, ch. 110, par. 13—205. See *Maxfield v. Simmons* (1982), 107 Ill. App. 3d 341, 347, 437 N.E.2d 839, 843 (Welch, J., dissenting), *rev'd on other grounds* (1983), 96 Ill. 2d 81, 449 N.E.2d 110.) The action here was filed within that five-year period.

■ Next, Bridgeport contends that it was proper to dismiss count 4 of the amended third-party complaint because "[c]ount IV clearly does not make the required allegation that the product was used for a purpose reasonably foreseeable by the manufacturer." We believe that when the allegations in the amended third-party complaint are viewed in their entirety, they sufficiently allege that the product was used for a purpose reasonably foreseeable by the manufacturer. Thus, we regard Bridgeport's argument as relating, at best, to a mere formal defect rather than a substantive defect. To see if a cause of action has been stated, we must consider the whole complaint rather than take a

myopic view of disconnected parts. (*People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 145, 435 N.E.2d 463, 466.) Moreover, in determining whether a cause of action is adequately alleged, the complaint must be liberally construed with a view to doing substantial justice between the parties. (Ill. Rev. Stat. 1983, ch. 110, par. 2—603(c).) Also, a cause of action should not be dismissed unless it clearly appears that no set of facts can be proved which would entitle the plaintiff to relief. (*People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 157-58, 435 N.E.2d 463, 472.) Thus, no pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim which he is called upon to meet. (Ill. Rev. Stat. 1983, ch. 110, par. 2—612(b); *People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 145, 435 N.E.2d 463, 466.) Here, we believe that count 4 of the amended third-party complaint contains such information as reasonably informs Bridgeport of the nature of the claim which it is called upon to meet.

For the reasons stated, we believe that counts 3 and 4 of the amended third-party complaint sufficiently allege causes of action in implied contract of indemnity which would, if proved, entitle Central to indemnity from Bridgeport. Therefore, counts 3 and 4 of the amended third-party complaint should not have been dismissed.

Accordingly, the dismissal of counts 1 and 2 of the amended third-party complaint is affirmed. The dismissal of counts 3 and 4 of the amended third-party complaint is reversed. The case is remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

McGILLICUDDY and WHITE, JJ., concur.