60 Ill.2d 342 (1975)
326 N.E.2d 758
In re ESTATE OF LILAH J. KROTZSCH.  (Stella M. Parsell, Ex'r, Appellee,
v.
Ruth Parsell Sibert et al., Appellants.)
No. 46773.
Supreme Court of Illinois.
Opinion filed March 24, 1975.
*343 George R. Schwarz, of Schwarz & Self, of Jerseyville, and Jack E. Horsley and Richard F. Record, Jr., of Craig & Craig, of Mattoon, for appellants.
Earl R. Bice and Daniel J. Greer, of Springfield, for appellee.
Judgment affirmed.
MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:
In her will executed on August 11, 1964, Lilah J. Krotzsch devised a certain 240-acre tract of real estate to her sister, Stella M. Parsell, for life, with the remainder to be divided as follows: an undivided one-fourth interest each to her niece, Ruth Parsell Sibert, and her nephew, Robert Parsell; an undivided one-half interest to another nephew, William Alfred Parsell. All of Mrs. Krotzsch's personal property and the residue of her estate were bequeathed to Stella M. Parsell, who was also named executor of the will. On April 7, 1966, the testatrix entered into a contract with Joseph and Mildred Kramer for the sale of the 240-acre tract. The purchase price of $156,000 was payable on an installment basis over a five-year period with the final payment due on April 1, *344 1971. In the event that Mrs. Krotzsch died prior to final payment, the contract provided that "such final payment shall be made to Stella Parsell * * * if she be living, otherwise to my estate." At the time of Mrs. Krotzsch's death on December 25, 1968, payments totalling $124,128.40 were still due on the contract. The sole issue before us is the proper distribution of the balance owed by the Kramers to Mrs. Krotzsch at her death. Is it payable to Stella Parsell, individually, either pursuant to the contract or as personalty under the will? Or is the distribution controlled by the will provisions devising the 240-acre tract, with the result that Stella Parsell takes only a life estate in the proceeds, the corpus to be divided at her death among Mrs. Krotzsch's niece and two nephews?
After her appointment as executor, Stella M. Parsell petitioned the circuit court of Sangamon County for authority, as executor, to execute a warranty deed conveying the 240-acre tract to the Kramers, the final payment to be made to her individually. Ruth Parsell Sibert, Robert Parsell and William Alfred Parsell (hereinafter respondents) filed an answer in the nature of a general denial, and a counterclaim praying for a construction of the will that would result in a distribution of the proceeds in accordance with the devise of the 240-acre tract in the will. The trial court granted the petition and ruled that the proceeds be distributed to Stella M. Parsell, individually. The Appellate Court for the Fourth District affirmed (18 Ill. App.3d 556) and we granted leave to appeal.
In 1967, subsequent to the execution of Mrs. Krotzsch's will and the contract with the Kramers but prior to Mrs. Krotzsch's death, the Illinois Probate Act (Ill. Rev. Stat. 1967, ch. 3, par. 1 et seq.) was amended by the addition of section 46a:
"If the testator, after making his will, makes a contract for the sale or transfer of property specifically devised or bequeathed therein, and the whole or any part *345 of the contract remains executory at his death, the disposition of the property by the contract shall not revoke the devise or bequest but the property shall pass to the devise or legatee subject to contract." (Ill. Rev. Stat. 1973, ch. 3, par. 46a.)
Respondents urge that since Mrs. Krotzsch's will specifically devised the 240-acre tract and the contract remained executory at her death, section 46a is applicable and dispositive of the issue presented by this case. We do not agree.
We note that the legislature, in enacting section 46a, made no provision for retroactive application to previously executed contracts, and it is entirely possible that retroactive application could operate, as it would here, to frustrate the contrary intent of a testator, a factor which may well have been considered by the General Assembly. "Legislative enactments are, in the absence of express language which provides otherwise, construed as prospective and not retrospective." (Stigler v. City of Chicago (1971), 48 Ill.2d 20, 24; see also Country Mutual Insurance Co. v. Knight (1968), 40 Ill.2d 423.) Those who, subsequent to the approval of section 46a, entered into contracts disposing of property included in previously executed wills may fairly be charged with knowledge of the effect of that amendment, and absent some manifestation of a contrary legislative intent, it seems clear that applying section 46a only to those contracts entered into subsequent to its effective date will promote fairness, uniformity and eliminate the possibility of constitutional problems. Therefore, even though section 46a was law at the time of Mrs. Krotzsch's death, it is not applicable here because the contract with the Kramers was entered into prior to the section's effective date of July 26, 1967.
Respondents also urge that section 46a was merely the codification of prior case law in this State, relying heavily on Heirs of Wright v. Minshall (1874), 72 Ill. 584, Covey v. Dinsmoor (1907), 226 Ill. 438, and Adams v. Peabody *346 Coal Co. (1907), 230 Ill. 469. For reasons detailed below, we do not find these cases to be convincing support for respondents' position. In our judgment the outcome of this case must be determined by application of the doctrines of equitable conversion and ademption.
Equitable conversion has long been recognized in Illinois and most other jurisdictions:
"Equitable conversion is the treating of land as personalty and personalty as land under certain circumstances. Hence, as between the parties and those claiming through them, when the owner of land enters into a valid and enforceable contract for its sale he continues to hold the legal title, but in trust for the buyer; and the buyer becomes the equitable owner and holds the purchase money in trust for the seller. The conversion takes place at the time of entering into the contract. It stems from the basic equitable principle that equity regards as done that which ought to be done." (Shay v. Penrose (1962), 25 Ill.2d 447, 449.)
But equitable conversion will not be applied where its application would defeat the intent of the testator. (Adams v. Peabody Coal Co. (1907), 230 Ill. 469, 475.) "An equitable conversion is implied only when the intent is unequivocal and the implication leaves no substantial doubt." Masters v. Masters (1927), 325 Ill. 429, 436.
Ademption, also long recognized in Illinois, has been defined by this court as follows:
"Ademption of a specific legacy or devise is the extinction, alienation, withdrawal or satisfaction of the legacy or devise by some act of the testator by which an intention to revoke is indicated; the doing of some act with regard to the subject matter of the devise which interferes with the operation of the will. It signifies an alteration in the subject matter of the legacy or devise. [Citations.]

*347 The doctrine of ademption applies to devises of real estate as well as to bequests of personal property. [Citation.] The rule is well settled that if the testator, in his lifetime, disposes of property specifically devised by him, this will operate as a revocation of the devise." (Brady v. Paine (1945), 391 Ill. 596, 600-01.)
If applicable to the present situation, equitable conversion would convert the 240-acre tract of real estate into personal property at the time of the contract with the Kramers. Under ademption, that conversion would effectively dispose of the real estate so as to "operate as a revocation of the devise" of the 240-acre tract. The personal property, i.e., the proceeds of the contract, would then pass to Stella Parsell, the legatee of Mrs. Krotzsch's personal estate.
Equitable conversion has been utilized by this court to determine the nature of property passing by intestate succession (Rhodes v. Meredith (1913), 260 Ill. 138; Shay v. Penrose (1962), 25 Ill.2d 447), but some confusion exists as to its applicability in determining the nature of property passing by testate succession because the doctrine was held to be inapplicable in Heirs of Wright v. Minshall (1874), 72 Ill. 584, Covey v. Dinsmoor (1907), 226 Ill. 438, and Adams v. Peabody Coal Co. (1907), 230 Ill. 469, all cases involving testate succession. The circumstances in those cases, however, differed markedly from those in this case.
In Minshall, the testator, prior to the execution of his will, had contracted to sell all his lands in Clay County. In his will, he devised all these lands to his sister. The notes of the purchaser were unpaid at the testator's death. This court held that the testator's "intention was, to devise to [his sister] such interest as he had in or to arise from the land, and that was the purchase money, and, though described in the will as land, the devise passed the purchase money." 72 Ill. 584, 585-6.) Covey also involved a *348 situation in which the testator had contracted to sell certain land prior to execution of his will. The devise of the land to his wife in the will was specifically made subject to the executory contract, and this court, relying on Minshall, held that the testator's intention was clearly that his wife should receive the proceeds of the contract; the doctrine of equitable conversion could not be utilized to defeat that clear intention. Indeed, to have applied equitable conversion in Minshall and Covey would have rendered meaningless the specific devises of real property by wills executed subsequent to the land-sale contracts, in which the testators clearly meant to transfer whatever interest they possessed in the land, including any proceeds due under the contracts.
In Adams, the testator, subsequent to the execution of his will which devised certain real estate, granted an option for mineral rights on this land. The option was exercised after his death, raising the question of whether the option proceeds belonged to the devises of the real estate. This court held that equitable conversion "should not apply in cases of this kind, as it would result in defeating the intention of the testator, which is the paramount rule of construction as to wills." 230 Ill. 469, 475.) The situation in Adams, involving only an option contract for mineral rights which might never have been exercised and, even when exercised, did not affect the devise of the real estate itself, is plainly not analogous to the present case.
What does seem clear from an analysis of these cases is that this court has refused to apply the doctrine of equitable conversion when to do so would defeat the intention of a testator, but has consistently applied that doctrine when its application has been consistent with the intentions of a testator.
The testator's intent here is plain and unmistakeable. In executing the contract with the Kramers, she included a provision specifically stating that in the event of her death *349 the proceeds were to be paid to her sister, Stella, or to her estate, precisely the manner in which her personal property was to pass under her will. This provision, in our judgment, is a clear indication that equitable conversion should be applied to convert the realty to personal property at the time the contract was executed. Whether that contract may not have complied with the statutory requirements for execution or revocation of a will is irrelevant, for the provision still serves to indicate her intention as to the proceeds of the contract, an intention which application of the doctrine of equitable conversion fulfills. Additionally, this contract was one to which the doctrine of equitable conversion is typically applicable. As of the date of sale, substantial incidents of ownership, including the right to income, were transferred to the Kramers. The contract was specifically enforceable and was binding as to heirs, executors and administrators. All that remained to be accomplished was final payment by the Kramers and a formal transfer of legal title by Mrs. Krotzsch. Since Mrs. Krotzsch had effectively disposed of real property specifically devised by her, the devise of the 240-acre tract in her will is adeemed and the proceeds of the contract pass as personalty to Stella Parsell.
The judgment of the Appellate Court for the Fourth District is affirmed.
Judgment affirmed.