JAMES O'DONNELL, Special Adm'r of the Estate of Kevin T. O'Donnell, Deceased, Plaintiff-Appellant, v. ELECTRO-MOTIVE DIVISION OF THE GENERAL MOTORS CORPORATION, Defendant-Appellee.

First District (4th Division)    No. 85—2007

Opinion filed October 9, 1986.

Charles R. Winkler, Ltd., of North Riverside (John J. Gorey, of counsel), for appellant.

Lord, Bissell & Brook of Chicago (Hugh C. Griffin and William J. Brennan, of counsel), for appellee.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiff, James O'Donnell, special administrator of the estate of Kevin T. O'Donnell, brings this appeal seeking reversal of a trial court order dismissing with prejudice plaintiff's two-count second amended complaint at law. Plaintiff's second amended complaint alleges that the Electro-Motive Division of the General Motors Corporation (GM) negligently and recklessly failed to light or otherwise maintain its parking lot, resulting in the death of plaintiff's decedent, Kevin T. O'Donnell. Specifically, count I of the second amended complaint sounds in ordinary negligence and count II claims GM's wilful and wanton misconduct.

The trial court dismissed both counts after ruling, as a matter of law, that: (1) GM did not owe plaintiff's decedent, a licensee, a duty of ordinary care on the date he sustained the injuries allegedly causing his death; and (2) the factual allegations of wilful and wanton misconduct in O'Donnell's second amended complaint failed to state a cause of action.

On appeal, O'Donnell claims that the trial court erred in that (1) the Premises Liability Act (Ill. Rev. Stat., 1984 Supp., ch. 80, par. 301 *et seq.*) should be enforced retroactively so as to permit his recovery on proof of GM's simple negligence; and (2) he has pleaded factual allegations sufficient to state a cause of action for wilful and wanton misconduct.

We affirm *in toto* the decision of the trial court dismissing plaintiff's second amended complaint at law.

BACKGROUND

This matter comes before us following the trial court's order granting GM's motion to strike and dismiss brought pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615). Accordingly, we are required to accept as true all well-pleaded factual allegations in O'Donnell's second amended complaint, and must draw all reasonable inferences in his favor. *Cook v. Askew* (1975), 34 Ill. App. 3d 1055, 341 N.E.2d 13.

The factual allegations of O'Donnell's second amended complaint state as follows. On July 4, 1983, Kevin O'Donnell died as a result of

personal injuries he sustained on July 3, 1983, in an incident in a parking lot owned by GM. The parking lot is located adjacent to GM's Electro-Motive Division plant in McCook. In the lot there are a series of concrete posts running from north to south and east to west, with some of the posts connected by steel cables which run through them. The posts and cables are used to designate parking areas, control the flow of traffic, and divide the large lot into two smaller lots (north lot and south lot). O'Donnell alleges that the cables running through and between the concrete posts were painted yellow, but that the paint had faded so that on the night of July 3, 1983, only the concrete posts were visible.

The parking lot in question was designated by GM for use by its employees during working hours. However, on the night of July 3, 1983, the plant was not in operation and GM gave permission to the Certified Grocers Association (Certified) to operate a park-and-shuttle operation out of the lot for a nearby special event. Certified retained Guards Mark Service to secure the lot and oversee the shuttle operation. Guards Mark Service, in turn, assigned its employee, Richard Plecki, to this duty.

Plaintiff's decedent, Kevin O'Donnell, was also an employee of Guards Mark Service. On the night of July 3, 1983, Kevin drove his motorcycle to the GM lot where he visited Plecki. While on the premises, Kevin drove his motorcycle across the lot in a southerly direction, coming into contact with one of the traffic-lane cables strung through the concrete posts located in the parking lot. The night was dark, and Kevin allegedly could not see the traffic-lane cable until he was in such close proximity to it that it could not be avoided. Consequently, Kevin sustained severe personal injuries, dying the next day, on July 4, 1983.

A wrongful-death action was subsequently filed against GM by James O'Donnell, special administrator of Kevin's estate. O'Donnell's second amended complaint at law, filed on November 16, 1984, alleged two counts against GM. Count I alleged liability for ordinary negligence under the Premises Liability Act (Ill. Rev. Stat., 1984 Supp., ch. 80, par. 301 *et seq.*), and count II claimed wilful and wanton misconduct. On June 7, 1985, the trial court entered an order dismissing O'Donnell's second amended complaint on the grounds that: (1) GM did not owe Kevin, a licensee, a duty of ordinary care on July 3, 1983, because the Premises Liability Act is not retroactive in its application; and (2) the factual allegations in O'Donnell's second amended complaint failed to state a cause of action for wilful and wanton misconduct. O'Donnell appeals from the trial court's order dismissing his second amended complaint.

Opinion

# I

Count I of O'Donnell's second amended complaint alleges that, on July 3, 1983, GM had a duty to warn plaintiff's decedent of the existence of the cable running through and between the posts in the parking lots in question. According to O'Donnell, the yellow paint on these cables had peeled and faded such that the cables were invisible in the nighttime, creating a dangerous condition on the premises. Count I alleges that GM's failure to make the premises safe or warn plaintiff's decedent of this dangerous latent condition was a breach of this duty, proximately causing Kevin O'Donnell's death. GM, on the contrary, contends that it owed no such duty to plaintiff's decedent because he was a licensee and therefore O'Donnell has failed to state a cause of action for negligence.

Under Illinois common law, the duty a property owner owes to a person who enters his premises depends upon whether the entrant is an invitee, licensee, or a trespasser. (*Pashinian v. Haritonoff* (1980), 81 Ill. 2d 377, 410 N.E.2d 21.) An invitee is defined in the common law as one who enters upon the premises with the owner's implied or express consent, for the mutual benefit of himself and the owner, or a purpose connected with the business in which the owner is engaged or permits to be carried on upon the premises. (*Grimwood v. Tabor Grain Co.* (1985), 130 Ill. App. 3d 708, 710, 474 N.E.2d 920, 922.) A licensee, in turn, is defined as one who enters upon the premises of another with the owner's express or implied consent "to satisfy his own purposes *rather* than for the mutual benefit of himself and the owner or a purpose connected with the business in which the owner is engaged or permits to be carried on upon the premises." (Emphasis added.) (*Trout v. Bank of Belleville* (1976), 36 Ill. App. 3d 83, 87, 343 N.E.2d 261, 264.) Finally, a trespasser is one who enters upon the premises of another with neither permission nor invitation. 36 Ill. App. 3d 83, 87, 343 N.E.2d 261, 264-65.

Under this so-called "premises doctrine," the highest duty imposed by law is to the invitee, to whom the owner owes a duty to maintain his premises in a reasonably safe condition and to warn of dangerous latent conditions. (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 329, 383 N.E.2d 177, 181.) On the other hand, the landowner must only refrain from wilfully and wantonly injuring a licensee or trespasser. *Pashinian v. Haritonoff* (1980), 81 Ill. 2d 377, 379, 410 N.E.2d 21.

The "premises doctrine," however, has been abolished in Illi-

nois, effective September 12, 1984, upon enactment of the Premises Liability Act (Ill. Rev. Stat., 1984 Supp., ch. 80, par. 301 *et seq.*). Under this statute, there is no longer a distinction between the invitee and the licensee, such that the landowner owed to all persons entering his premises with his express or implied consent the duty of reasonable care regardless of the purpose of the visit; to wit: the duty to maintain the premises in a reasonably safe condition and to warn of dangerous latent conditions. (See *Zimring v. Wendrow* (1985), 137 Ill. App. 3d 847, 485 N.E.2d 478; *Grimwood v. Tabor Grain Co.* (1985), 130 Ill. App. 3d 708, 474 N.E.2d 920.) The duty owed to the trespasser, including the trespassing child entrant upon the premises, has not been changed by the Act. Ill. Rev. Stat., 1984 Supp., ch. 80, par. 303.

As a preliminary matter, we note that it is undisputed in this case that on July 3, 1983, Kevin O'Donnell entered upon GM's premises as a licensee. This is significant because, as noted above, the duty owed by a landowner to a licensee under the Premises Liability Act is different than that under the common law premises doctrine. Under the former, the landowner owes the licensee the higher duty of reasonable care owed only to the invitee at common law. Under the latter, the landowner is only charged with the duty to refrain from wilfully or wantonly injuring the licensee. See *Trout v. Bank of Belleville* (1976), 36 Ill. App. 3d 83, 86, 343 N.E.2d 261, 264.

In the instant case, the trial court dismissed count I of O'Donnell's second amended complaint on the ground that GM did not owe plaintiff's decedent, a licensee, a duty of ordinary care on July 3, 1983. In so doing, the trial court held that the Premises Liability Act (Ill. Rev. Stat., 1984 Supp., ch. 80, par. 301 *et seq.*), which establishes such a duty (see *Zimring v. Wendrow* (1985), 137 Ill. App. 3d 847, 485 N.E.2d 478; *St. Phillips v. O'Donnell* (1985), 137 Ill. App. 3d 639, 484 N.E.2d 1209; *Grimwood v. Tabor Grain Co.* (1985), 130 Ill. App. 3d 708, 474 N.E.2d 920), should not be applied retroactively. We agree with the position taken by the trial court in this case.

Prior to this case, two Illinois courts have noted in *dicta* that the Premises Liability Act is not to be retroactively applied. In both *Zimring v. Wendrow* (1985), 137 Ill. App. 3d 847, 485 N.E.2d 478, and *Grimwood v. Tabor Grain Co.* (1985), 130 Ill. App. 3d 708, 474 N.E.2d 920, the Second and Third District Appellate Courts, respectively, stated that the Premises Liability Act did not apply to injuries occurring prior to September 12, 1984, the effective date of the Act.

In *Zimring*, the Second District Appellate Court dismissed plaintiff-licensee's action alleging negligence against landowners when he

was physically abused by other social guests on the premises. The court found that defendant had no duty to protect a social guest from criminal acts of third parties committed on his property. Discussing the premises doctrine, the *Zimring* court noted that the September 12, 1984, effective date of the Premises Liability Act would not apply to an occurrence on August 8, 1982. (*Zimring v. Wendrow* (1985), 137 Ill. App. 3d 847, 851, 485 N.E.2d 478, 481.) Similarly, in *Grimwood*, plaintiff was injured when he fell down from his motorcycle on defendant's pothole-filled driveway. Determining as a matter of law that Grimwood was a licensee at the time of his injury, the court dismissed Grimwood's complaint alleging negligence, refusing to give the Premises Liability Act retroactive application. *Grimwood v. Tabor Grain Co.* (1985), 130 Ill. App. 3d 708, 711, 474 N.E.2d 920, 922.

The *Grimwood* court quoted with approval our supreme court's pronouncement in *In re Estate of Krotzsch* (1975), 60 Ill. 2d 342, 345, 326 N.E.2d 758, 760, that " '[l]egislative enactments are, in the absence of express language which provides otherwise, construed as prospective and not retrospective.' " (*Grimwood v. Tabor Grain Co.* (1985), 130 Ill. App. 3d 708, 711, 474 N.E.2d 920, 922.) This is in keeping with the policy in this State that retroactive legislation is not favored in the law (34 Ill. L. & Prac. *Statutes* sec. 193 (1958). Like the *Grimwood* court, we also note that our legislature made no provision for retroactive application of the Premises Liability Act. Accordingly, there is no reason, based on the face of the Act or this State's police against retroactive legislation, to apply the Premises Liability Act to the instant case.

■ O'Donnell posits another reason for us to apply the Premises Liability Act to this case, to wit: that the Act itself is procedural in nature and therefore may be retroactively applied. It is true that Illinois courts have held that a statute may be retroactively applied, even without a clear expression of legislative intent, if the statute affects only matters of procedure, remedies, and rules of evidence which are at all times subject to modification by the legislature. (See *Hogan v. Bleeker* (1963), 29 Ill. 2d 181, 184-85, 193 N.E.2d 844, 847.) However, as we discussed above, the Premises Liability Act modifies the common law by establishing the duty owed to one class of individuals (entrants upon a premises) by another class of individuals (owners and occupiers of land).

■ In our view, the change is substantive since the Premises Liability Act alters both the duties and obligations owed by the landowner to the entrant upon the premises, as well as the rights of the entrant who is now entitled to reasonable care regardless of whether

under the common law he would have been considered an invitee or licensee. Thus, the Act effectively creates a cause of action in a class of individuals (licensees) previously not entitled to the higher standard of reasonable care under the common law. O'Donnell contends that this change is one of procedure because it alters pleading requirements, evidence to be adduced at trial, and jury instructions. O'Donnell's argument is flawed since the changes he lists are merely methods of enforcing the substantive rights of the parties which have been altered by enactment of the Premises Liability Act. As such, it is presumed that the legislature intended the Premises Liability Act to be applied prospectively, and not retroactively. See 1A A. Sutherland, Statutory Construction sec. 22.36 (4th ed. 1972).

## II

We now turn to O'Donnell's count II, which the trial court dismissed for failure to plead the factual allegations necessary to state a cause of action for wilful and wanton misconduct. O'Donnell claims that GM's alleged use of concrete posts strung with steel cable to control the flow of traffic in its parking lot, absent specific warnings or additional illumination of the cable at night, was wilful and wanton misconduct. GM, on the other hand, contends that the trial court properly dismissed count II of O'Donnell's second amended complaint since a landowner's failure to warn a licensee of a condition on the premises concealed only by darkness does not constitute wilful and wanton misconduct.

It is basic that in order to state a cause of action for wilful and wanton misconduct against a landowner, a plaintiff must allege facts sufficient to raise a duty to act, and plaintiff's mere characterization of certain acts and omissions by the landowner as wilful and wanton misconduct is insufficient to withstand a motion to dismiss. (See *Gregor v. Kleiser* (1982), 111 Ill. App. 3d 333, 443 N.E.2d 1162.) In the instant case, count II of O'Donnell's second amended complaint alleges that one or more of the following acts or omissions by GM constituted wilful and wanton misconduct:

"(a) It (GM) failed to warn the public of the existence of the cable;

(b) It failed to have the parking lot properly lit so that the cable was visible in the nighttime;

(c) It failed to place any flags, ribbons or other warning device on the cable;

(d) It allowed the yellow paint to fade and peel from the cable;

(e) It failed to repaint the cable so that it would have been visible in the nighttime; and

(f) It failed to remove the cable knowing of its dangerous propensity to cause injury or death."

O'Donnell further charges that the above conduct created a dangerous condition on GM's premises, proximately causing the incident resulting in plaintiff's decedent's death. We agree with the position taken by the trial court and GM that proof of the acts alleged above will not support a finding of wilful and wanton misconduct.

■ Wilful and wanton misconduct is defined as "a course of action which shows either deliberate intention to harm or utter indifference to, or conscious disregard for, the safety of others. [Citations.]" (*Kapka v. Urbaszewski* (1964), 47 Ill. App. 2d 321, 324, 198 N.E.2d 569, 571.) Accordingly, our courts have repeatedly held that it is not wilful and wanton misconduct for a landowner to fail to warn a licensee of a dangerous condition concealed only by darkness since such a danger is not considered hidden. See *Mazzeffi v. Schwanke* (1977), 52 Ill. App. 3d 1032, 368 N.E.2d 441 (no duty to warn of an open hole behind defendant's service station 3 feet wide and 8 feet deep concealed only by darkness); *Helfenbein v. Malzahn* (1974), 24 Ill. App. 3d 616, 321 N.E.2d 394 (no duty to warn of a hole on defendant's driveway concealed only by darkness); *Hessler v. Cole* (1972), 7 Ill. App. 3d 902, 289 N.E.2d 204 (no duty to warn of a hole in floor boards of defendant's unlit fishing pier); *Dent v. Great Atlantic & Pacific Tea Co.* (1955), 4 Ill. App. 2d 500, 124 N.E.2d 360 (no duty to warn of defendant's sunken driveway hidden only by darkness).

The above principle was applied in *Trout v. Bank of Belleville* (1976), 36 Ill. App. 3d 83, 343 N.E.2d 261, a case very similar to the case before us and cited numerous times above. There, plaintiff's decedent suffered fatal injuries when, while driving his motorcycle at night through a parking lot, he struck a chain strung across the lot. The chain was dark in color and not illuminated by artificial light, much like the cable strung through the concrete parts in GM's parking lot in this case. There the appellate court affirmed a directed verdict entered by the trial court in favor of defendant bank. The court held that the presence of the chain across the parking lot, even without warnings and artificial lighting, did not as a matter of law establish wilful and wanton misconduct. 36 Ill. App. 3d 83, 343 N.E.2d 261.

O'Donnell attempts to distinguish *Trout* from this case on the basis that in *Trout* the bank had no knowledge that anyone used the parking lot at night, whereas here GM allowed the general public ac-

cess to its facilities on the night in question. Close scrutiny of *Trout*, however, shows this distinction to be of no significance to this case. The *Trout* court made reference to the bank's lack of knowledge that anyone used the premises as a vehicle to distinguish *Trout* from cases where there is "continuous use" of a well-defined path or roadway through the tolerance of the landowner. In these cases, an affirmative act of the landowner making more dangerous the path or roadway will, unless the landowner gives sufficient warning to the public, constitute wilful and wanton misconduct. See *Moore v. Ohio Oil Co.* (1926), 241 Ill. App. 388 (plaintiff injured when automobile in which she was riding struck wire cable which had been stretched across a roadway upon which the public had been accustomed to travel at a point where cable was not readily visible); *cf. Wrigley v. Electric & Machine Co.* (7th Cir. 1969), 419 F.2d 972 (relying on *Moore*, the Seventh Circuit reinstated a verdict for wilful and wanton misconduct where, despite a small warning sign, plaintiff's decedent was killed when his motorcycle hit a cable stretched across roadway leading to an abandoned mine being salvaged by defendant where the road was frequently used by motorcyclists on weekends).

In the instant case, O'Donnell has failed to plead facts alleging "continuous use." In fact, it is easily ascertained from O'Donnell's complaint that GM's premises were open to the public on July 3, 1983, under extraordinary circumstances. Notwithstanding any argument that count II alleges an affirmative undertaking (or omission) by GM which made the parking lots more dangerous, O'Donnell's attempts to distinguish *Trout* from the case at bar based on GM's knowledge of the use of its premises on the night in question is doomed.

O'Donnell also unsuccessfully relies upon *Bofman v. Material Service Corp.* (1984), 125 Ill. App. 3d 1053, 466 N.E.2d 1064, *Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 450 N.E.2d 1199, and *Davis v. United States* (7th Cir. 1983), 716 F.2d 418, to support his contention that GM acted wilfully and wantonly toward Kevin O'Donnell by failing to warn him of the existence of the parking-lot cable in this case. In *Bofman*, a landowner was held to have breached a similar duty to private boaters who were injured at night when the boat in which they were riding struck a partially submerged barge in defendant's sand and gravel pit. Defendant knew that boaters traversed his waters at night despite his alleged "no trespassing" warning and the existence of a pontoon gate to block access to the pit. However, it is significant to note two distinguishing characteristics in *Bofman*. First, the dangerous condition was partially hidden in the

daytime and was therefore a concealed danger regardless of day or night. Second, prior to the incident in *Bofman*, defendant failed to repair a light which previously served to warn boaters of the hidden hazard. In our view, defendant's failure to repair this light created increased danger similar to the "continuous use" cases (*Moore* and *Wrigley*) distinguished by the *Trout* court and likewise different from cases where a defect was hidden only by darkness like the case at bar. Thus, *Bofman* is also inapposite to the case at bar.

Likewise, inapposite are *Hazelwood* and *Davis*. *Hazelwood* does not apply since there the finding that defendant's wilful and wanton conduct proximately caused a motorcyclist's injury at a railroad crossing was based on the railroad's failure to comply with standards proscribed by the Public Utilities Act (Ill. Rev. Stat. 1981, ch. 111⅔, par. 62), a factor for determining wilful and wanton conduct in a railroad-crossing case. (See *Harvey v. Norfolk & Western Ry. Co.* (1979), 73 Ill. App. 3d 74, 390 N.E.2d 1384.) In *Davis*, on the other hand a trespassing swimmer was injured when he came in contact with subsurface rocks in the landowner's lake. The Seventh Circuit there held, applying Illinois law, that posted "no swimming" and "no diving" signs were inadequate warnings of a concealed defect, finding the landowner guilty of wilful and wanton conduct. (*Davis v. United States* (7th Cir. 1983), 716 F.2d 418.) That case, however, is a concealed-defect case. We have already determined that a condition concealed only by darkness is not "hidden" under Illinois law.

■ Finally, we note that O'Donnell makes reference to what he alleges "the evidence could certainly show" in this case. On reviewing a motion to dismiss, we are required only to accept as true all well-pleaded factual allegations in O'Donnell's second amended complaint and all reasonable inferences that can fairly be drawn from these facts. (See *Cook v. Askew* (1975), 34 Ill. App. 3d 1055, 341 N.E.2d 13.) This does not require us to draw unreasonable or unwarranted inferences in order to sustain O'Donnell's complaint. (*Carlson v. Moline Board of Education* (1984), 124 Ill. App. 3d 967, 464 N.E.2d 1239.) Accordingly, in reviewing this case we have considered only the ultimate facts to be proved, and not the evidentiary facts tending to prove such ultimate facts. (See *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 430 N.E.2d 1005.) Based on the above, we believe O'Donnell's count II fails to plead any conduct by GM which shows either deliberate intention to harm, or utter indifference to or conscious disregard for the safety of, Kevin O'Donnell.

In sum, we affirm the trial court's dismissal of O'Donnell's complaint on the grounds that: (1) GM did not owe plaintiff's decedent, a

licensee, a duty of ordinary care on the date he sustained the injuries allegedly causing his death (the Premises Liability Act does not apply retroactively); and (2) the factual allegations of wilful and wanton misconduct alleged in count II of O'Donnell's second amended complaint fail to state a cause of action.

Affirmed.

JOHNSON and McMORROW, JJ., concur.