BRAD STRODE, as Guardian and Next Friend of John David Strode, a/k/a J.D. Strode, Plaintiff-Appellant, v. WILLIAM BECKER, Defendant-Appellee.

Fourth District · No. 4—90—0172

Opinion filed September 26, 1990.—Modified on denial of rehearing January 24, 1991.

STEIGMANN, J., dissenting.

Thomas R. Blondell, of Beckett & Crewell, of Champaign, for appellant.

Michael E. Raub, of Heyl, Royster, Voelker & Allen, of Urbana, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On July 21, 1989, plaintiff Brad Strode, as guardian and next friend of John David Strode, a minor, brought suit in the circuit court of Champaign County against defendant William Becker, charging negligence and seeking damages for personal injuries sustained by the minor. On January 8, 1990, upon defendant's motion (Ill. Rev. Stat. 1987, ch. 110, par. 2—615) that court dismissed plaintiff's first-amended complaint with prejudice for failure to allege a breach of duty owed by defendant to the minor. Plaintiff appeals. We reverse and remand.

The plaintiff's first-amended complaint, in part, alleged: (1) on April 1, 1988, John David (then 2½ years old), and his family were at the defendant's home; (2) at that time, the child was injured when his fingers were caught in the rotating spokes of an "exercycle" while being operated by the defendant's niece; (3) the "exercycle" was located in the defendant's living room adjacent to the children's playroom; (4) the "exercycle" was a dangerous condition of which the defendant negligently failed to remedy or warn the child as to its dangerous propensities; (5) the injury was foreseeable because the defendant knew the child would be visiting his home and also knew or should have known the "exercycle" posed greater risks than children can comprehend and avoid; and (6) the defendant knew that other children had previously been injured by using and/or playing with the "exercycle."

The complaint also alleged that pursuant to section 2 of the Premises Liability Act (Act) (Ill. Rev. Stat. 1987, ch. 80, par. 302), the defendant, as a homeowner-occupier, possessed a duty to exercise reasonable care under the circumstances regarding the state of the premises for those persons lawfully upon the premises.

A discussion of a landowner's duty to protect children from dangerous conditions existing on the property logically begins with *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836, a case involving a trespassing child. There, the supreme court abandoned the attractive nuisance doctrine and concluded that the appropriate criterion for determining landowner liability in cases of personal injury to children is the ordinary rules of negligence. Since the minor plaintiff in *Kahn* was a trespasser, the court noted that ordinarily, a landowner has no duty to protect children who are trespassing on the property. However, the court recognized that children, even if trespassing on the property, need special protection from injury, because their immaturity and inexperience render them unable to comprehend and avoid dangerous situations.

Thereupon, the *Kahn* court formulated an exception to the

general rule that a landlord has no duty to protect children who are trespassing:

> "It is recognized, however, that an exception exists where the owner or person in possession knows, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children. In such cases there is a duty upon the owner or other person in possession and control of the premises to exercise due care to remedy the condition or otherwise protect the children from injury resulting from it." *Kahn,* 5 Ill. 2d at 625, 126 N.E.2d at 842.

Logically, a landowner or occupier would have at least as great a duty to children who are invitees or, as here, licensees as to those who are trespassers. Subsequent to *Kahn,* the cases have deemed landowners or occupiers to have the *same* duty to children who are invitees or licensees. For example, in *Pasierb v. Hanover Park Park District* (1981), 103 Ill. App. 3d 806, 431 N.E.2d 1218, the complaint alleged a seven-year-old boy drowned in a creek located in a park, owned and operated by the defendant park district. The creek was covered with a layer of ice upon which snow had accumulated, concealing the creek's location. The trial court dismissed that plaintiff's complaint, and the appellate court, after applying the *Kahn* conditions, reversed, holding the creek was a dangerous condition which, under the circumstances, posed a risk which children generally could not appreciate and avoid.

The supreme court in *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177, noted that as a result of *Kahn,* the common law categories of trespasser, licensee, and invitee no longer have a bearing on whether a landowner has a duty to protect children from dangerous conditions on the property. Provided that the prerequisites set forth in *Kahn* are present, the injury is deemed foreseeable and the landowner has a duty to remedy the condition. *Corcoran,* 73 Ill. 2d at 326, 383 N.E.2d at 180.

As plaintiff correctly sets forth, now, under section 2 of the Act, an owner or occupier of land has a duty to exercise ordinary care to a person rightly on the land regardless of whether that person is an invitee or a licensee. Previous to the enactment of the Act, the duty of a landowner or occupier to a licensee, not subject to the protection of *Kahn,* was to refrain from wilful and wanton misconduct.

*(O'Donnell v. Electro-Motive Division of the General Motors Corp.* (1986), 148 Ill. App. 3d 627, 631-32, 499 N.E.2d 608, 611.) However, because of the precedent of *Kahn* and its progeny, the duty of the defendant here to the child allegedly injured was not changed by the enactment of the Act.

■ In examining the first amended complaint to see whether it complied with the *Kahn* factors, we first note that defendant does not dispute the sufficiency of that portion of the complaint alleging that he knew young children would likely be in the vicinity of the "exercycle." We next consider whether that complaint properly alleged the "exercycle" was a dangerous instrument. An "exercycle" is, apparently a stationary bicycle upon which a person sits and pedals causing a single wheel to rotate, all for the purpose of obtaining exercise. Clearly, by itself, such an apparatus is a harmless agency. However, an innocuous object, when combined with additional circumstances, can become a dangerous condition. (*Niemann v. Vermilion County Housing Authority* (1981), 101 Ill. App. 3d 735, 739, 428 N.E. 706, 710.) In order for the trial court to conclude that a dangerous condition existed, the plaintiff must sufficiently allege ultimate facts that describe a condition that "exposes children to risks greater than those which normally attend their daily lives." *Corcoran*, 73 Ill. 2d at 328, 383 N.E.2d at 181.

The defendant properly contends that some authorities plaintiff cites in support of his contention that the alleged "exercycle" was a dangerous instrument are distinguishable from the allegations contained in plaintiff's complaint. For example, the plaintiff cites to *Scarano v. Town of Ela* (1988), 166 Ill. App. 3d 184, 520 N.E.2d 62, where the appellate court found that plaintiff's complaint sufficiently established a dangerous condition by alleging a defect in a slide. Plaintiff also cites to *Ford v. Wilson* (1989), 184 Ill. App. 3d 374, 540 N.E.2d 1, where the appellate court deemed an overgrown bike path a dangerous condition, because the potential harm of being hit by a car was hidden from the bike rider. Here, the only direct allegation of any defect in the "exercycle" was that it was "an old, time worn exercycle." The complaint does not directly state how the "old, time worn" apparatus became dangerous.

Closer in point is the case of *Novak v. C.M.S. Builders & Developers* (1980), 83 Ill. App. 3d 761, 404 N.E.2d 918. In *Novak*, the complaint alleged that a 10-year-old plaintiff was injured after falling into an excavation at a construction site. The trial court dismissed plaintiff's complaint against the defendant builder, and the appellate court reversed. The appellate court concluded that in combination, the excavation, mounds of dirt, and concrete created a foreseeable danger

that a child may slip, slide, and fall. Moreover, the court found that the excavation did not present merely the risk of falling into an obvious depression but that circumstances may also be proved to be sufficiently "obscure in their potential danger to infant trespassers as to be more unusual than those encountered in their daily lives." *Novak*, 83 Ill. App. 3d at 765, 404 N.E.2d at 921.

While the instant complaint does not state directly how the exercycle was dangerous, we conclude a sufficient indirect allegation is made to survive dismissal at this stage of the proceedings. As distinguished from Federal practice, Illinois requires a pleader to set forth ultimate facts giving rise to the cause of action or defense for which relief is requested. (*Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 546 N.E.2d 580.) However, the entire complaint may be examined to determine whether such ultimate facts are alleged. (*People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 435 N.E.2d 463.) As we have indicated, the first amended complaint indicated the child's fingers were caught in the spokes of the wheel of the exercycle while the wheel was rotating. Thus, we may conclude the danger in the "exercycle" was that a very small child could stick his fingers through the spokes of the wheel while the wheel was rotating.

We conclude that under the circumstances alleged here, a sufficient allegation of the dangerousness of the exercycle to the child was made. Consider rather than an exercycle on the floor of a room where children were expected to be, an operating electrical fan. If the face of that fan was alleged to be such that a small child could stick its finger in and between the blades of that fan, would not an allegation of a dangerous instrumentality be properly stated? The situation alleged here is very similar.

The defendant's contention that the instant case is more similar to *Bonamie v. Welsh* (1981), 95 Ill. App. 3d 349, 420 N.E.2d 243, than *Novak* is unpersuasive. In *Bonamie*, the complaint alleged that a five-year-old boy fell through a glass door while playing on that defendant's porch. The trial court dismissed the complaint against the defendant landowner, and the appellate court affirmed, holding that plaintiff failed to establish that defendant had a duty to protect plaintiff from injuring himself on the door. In particular, the appellate court concluded that plaintiff's complaint did not contain any allegation that transformed a glass door into a dangerous condition.

The *Bonamie* court reasoned that, without additional circumstances, a defendant cannot be expected to protect children from injuring themselves on common household items under plain ordinary

circumstances. An "exercycle" is an item which is becoming more common in households. However, the element of comparing the risk to the child with the expense and inconvenience of remedying the condition set forth in *Kahn* (5 Ill. 2d at 625, 126 N.E.2d at 842) comes into play in determining whether material differences exist between the *Bonamie* complaint and the complaint here. Replacing a glass door would be much more expensive and inconvenient than moving an exercycle to a confined place or closing the room where an exercycle is kept.

■ We, thus, hold that each of the *Kahn* factors imposing a duty on landowners to very young children is sufficiently alleged by the first amended complaint.

In *Driscoll v. C. Rasmussen Corp.* (1966), 35 Ill. 2d 74, 219 N.E.2d 483, a seven-year-old boy was injured while playing with a trash pile which contained some paint or lacquer cans and which was on defendant's property. Another child playing with the injured child apparently opened one of the lacquer cans which the injured child then stepped on, causing lacquer to be sprayed on his leg. The injured child then came near burning leaves on adjacent property where the boys had been playing. The boy's pant leg caught on fire. The father of one of the other boys had started the leaf fire. He had noticed the boys had been playing with the fire and had warned them to stop doing so but had gone to another part of the lot to rake some more leaves when the injured child was burned. A judgment on a verdict for the child was eventually reversed by the supreme court. The court concluded the evidence failed as a matter of law to show any negligence upon the part of the defendant which was a proximate cause of the child's injury and it failed to show that the trash pile was a dangerous condition. The basis of the decision seemed to be that the defendant could not be required to have foreseen that leaving paint cans in the trash pile would likely cause a child to be burned.

The *Driscoll* court further stated:

> "It is always unfortunate when a child gets injured while playing, but a person who is merely in possession and control of the property cannot be required to indemnify against every possibility of injury thereon. *The responsibility for a child's safety lies primarily with its parents, whose duty it is to see that his behavior does not involve danger to himself.* Others can be held responsible for injuries only if they are at fault under some recognized theory of liability." (Emphasis added.) *Driscoll*, 35 Ill. 2d at 79, 219 N.E.2d at 486.

Similarly, in *Salinas v. Chicago Park District* (1989), 189 Ill. App.

3d 55, 545 N.E.2d 184, the appellate court affirmed the circuit court's grant of summary judgment in favor of that defendant holding defendant did not have a duty to protect the eight-year-old mentally handicapped plaintiff from falling off a slide. Further, that court deemed the risk of falling off a slide was obvious and "if a child is too young chronologically or mentally to be 'at large,' the duty to supervise that child as to obvious risks lies primarily with the accompanying parent." *Salinas,* 189 Ill. App. 3d at 62, 545 N.E.2d at 188.

■■ We share the concern of the *Driscoll, Salinas,* and *Bonamie* courts that landowners cannot protect against all injuries which small children may incur. Numerous injuries to small unsupervised children resulting from such appliances as lamps that can be pulled from tables and electrical sockets which can be penetrated with slender metal objects are easily foreseeable. We agree with the *Driscoll* and *Salinas* courts that *primary* responsibility for injury to very young children must be placed on parents of children or those who are entrusted with their supervision. We note that the parents may ultimately be liable for their negligent supervision of the child. (*Larson v. Buschkamp* (1982), 105 Ill. App. 3d 965, 969, 435 N.E.2d 221, 224.) However, the *Driscoll* court did not say that owners and occupiers of land are absolved of all duty to very young children because of responsibility of their parents. In *Salinas,* the owner had no duty to warn of the danger of the slide or prevent its use when the danger to an impaired child was obvious to an accompanying parent.

When small children are being watched by their parents, or entrusted persons in supervision, landowners may be relieved of duty to warn them of or remove dangerous instrumentality the danger from which is apparent. In *Kay v. Ludwick* (1967), 87 Ill. App. 2d 114, 230 N.E.2d 494, this court held a landowner operating a mowing machine had no duty to discontinue use of the machine while a small child accompanied by the child's mother was playing in the yard. In *Trotter v. Chicago Housing Authority* (1987), 163 Ill. App. 3d 398, 516 N.E.2d 684, a split court held a landlord had no duty to protect a very young child from an uninsulated steam pipe, which was near the child's bed. The child's mother was well aware of the condition of the pipe. See also *Keller v. Mols* (1984), 129 Ill. App. 3d 208, 472 N.E.2d 161; *O'Clair v. Dumelle* (N.D. Ill. 1990), 735 F. Supp. 1344.

■■ ■ Any diminution of duty upon the landowner which may arise because a minor child on the landowner's premises is under the control of a parent or another person having superintendence need not be negated in a pleading seeking recovery for injury to the minor. The fact that the instant complaint alleges the child's parent accompa-

nied the child to defendant's home does not, of itself, negate duty on the part of defendant. However, the existence of duty is a question of law. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387, 396, *cert. denied* (1988), 485 U.S. 905, 99 L. Ed. 2d 236, 108 S. Ct. 1077.) If, at subsequent proceedings, the evidence develops that a parent were with the child while it was playing near the exercycle or knew of the existence and condition of the exercycle, the holdings in *Kay* and *Trotter* should then be considered. However, that issue is not before this court at this time. Likewise, the actual condition of the exercycle, which is so scantily pleaded, can also have a significant bearing upon the existence of a duty by defendant. However, as we have indicated, we hold the first amended complaint is sufficient to state a cause of action.

We reverse the judgment dismissing the complaint with prejudice and remand for further proceedings.

Reversed and remanded.

LUND, J., concurs.

JUSTICE STEIGMANN, dissenting:

I respectfully dissent. I would affirm the judgment of the trial court dismissing the complaint because, accepting all well-pleaded facts as true, the complaint fails to demonstrate a duty on the part of the defendant to protect the plaintiff from the injury which occurred in this case. The complaint contains no claim that the exercycle was in a dangerous or defective condition. All the complaint shows was that the exercycle was in an area of the residence to which this 2½-year-old child had access, and when the exercycle was operated by another child, the plaintiff was injured when he stuck his fingers into the spokes of the machine.

Section 2 of the Premises Liability Act (Ill. Rev. Stat. 1987, ch. 80, par. 302) imposes a duty upon a homeowner-occupier to exercise reasonable care under the circumstances regarding the state of the premises for those persons lawfully upon the premises. However, that statute does not impose a duty upon a homeowner-occupier to *insure* the safety of toddlers who might roam throughout the premises without supervision.

In our increasingly litigious society, our courts are often faced with the difficult challenge of making specific value judgments about the duties to be imposed upon the people of this State. This case is no exception. The plaintiff has asked this court to find that defendant

was under a legal obligation to warn and protect a 2½-year-old child against the potential danger a household item might present. However, *every* household item *might* present a danger to a 2½-year-old child. The plaintiff has not pleaded any extraordinary liability facts, nor has the plaintiff effectively argued why social policy should recognize such a broad duty.

Most modern households are filled with items which could injure a toddler who is left free to roam and give vent to his curiosity. I do not believe it appropriate for this court to find a duty upon a homeowner to *insure* that this roaming, curious toddler will not be injured. This duty appropriately belongs with the child's parents or other person to whose supervision the child has been entrusted.

I fear the holding in this case gives new meaning to the term "child-proofing" a home.