HABINA *v*. TWIN CITY GENERAL ELECTRIC CO.

1. APPEAL AND ERROR—REVIEW—QUESTIONS CONSIDERED.
    Where the trial judge in directing a verdict for defendant stated that if he regarded the proofs sufficient to sustain a verdict for plaintiff he should permit an amendment of the declaration to conform to the proofs, the objection of variance is not open for the consideration of this court on error.

2. SAME—PRESUMPTIONS—THEORY BELOW—CONCLUSIVENESS OF FINDINGS.
    In an action for negligence against the occupant of certain lands, the court charged that there was no question but that the defendant had the right to occupy the property, and that there was sufficient testimony to show that it had used the property for a long term of years for the purposes set forth in the declaration.   Testimony was introduced tending to prove that defendant was the lessee of the entire premises and paid rent therefor, and neither in requests to charge nor in the reasons given for a new trial was the theory presented

that defendant was a mere licensee. The errors assigned did
not raise the question, and none of them was based upon the
rulings admitting the testimony tending to prove the defend-
ant to be a lessee of the land. *Held,* that as a matter of prac-
tice this court on review should regard the finding made by
the lower court to be conclusive.

3. NEGLIGENCE—EVIDENCE—OCCUPANCY OF LAND—CHARACTER OF
USE.
    In an action for negligence against the occupant of certain
    lands, evidence examined, and *held,* to show conclusively
    that defendant's occupancy and use of the land was visible
    and constant and, for purposes of its business, exclusive, and
    that the use made of it by plaintiff and the public was merely
    casual.

4. SAME—UNENCLOSED LANDS—RIGHTS OF PUBLIC.
    Where a power company by permission of the owner occupied
    certain unenclosed lands adjoining its plant, such occupancy
    being visible and constant, and, for the purposes of its busi-
    ness, exclusive, the fact that it did not deny the public the
    privilege of traveling over the lands in any direction not ob-
    structed by its use did not impart to the lands the character
    of a highway and give to individual members of the public
    rights similar to their rights in the highway.

5. SAME—TRESPASSERS—NAKED LICENSEES—LIABILITY OF LAND-
OWNER.
    A landowner is not liable for an injury sustained by a naked
    licensee from falling, while in the exercise of proper care, into
    an unguarded ditch upon his land unless his conduct in open-
    ing the ditch and leaving it unguarded at the point where
    the accident occurred was such a change in the condition of
    the premises as indicated a reckless and wanton disregard of
    the safety of the plaintiff and others.

6. SAME.
    Defendant electric company, by permission of the owner, occu-
    pied certain unenclosed lands adjoining its power plant for
    storing materials and fuel and for piling ashes, and across it
    laid a pipe line for the purpose of conducting waste steam
    and hot water from the plant. The public, including plain-
    tiff, was accustomed to cross it at will in any direction not
    obstructed by defendant's use, but *no path or way existed at
    the point where plaintiff was injured.* Defendant, having
    occasion to repair its pipe line, opened the ditch in which it
    was laid and left it open overnight without barriers, and
    plaintiff, in attempting to cross the land in the night, fell into

the ditch and was scalded. *Held*, that assuming that plaintiff was a licensee, defendant owed her no duty to notify her of a necessary change in the condition of its premises, and was not liable for her injury though there were no barriers.

Error to Gogebic; Haire, J. Submitted June 19, 1907. (Docket No. 25.) Decided November 5, 1907.

Case by Annie Habina, by next friend, against the Twin City General Electric Company for personal injuries. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*Julius J. Patek* (*Charles F. Button* and *D. B. Nash,* of counsel), for appellant.

*Charles M. Humphrey*, for appellee.

OSTRANDER, J. Both parties introduced testimony at the trial, a verdict for defendant was directed, and a motion for a new trial denied. It is averred in the declaration that across certain unenclosed lands west of and adjoining the power house of defendant there was—

"A permissive right of way, a regularly traveled route, over which the general public in vehicles and on foot, night and day, was accustomed to pass and repass without let or hindrance, and with entire acquiescence of the owners and lessees of said lands and persons in possession thereof, and of which said permissive right of way and of the custom of the public to travel over and thereon said defendant had full knowledge."

That the defendant caused a dangerous ditch or excavation to be dug across the lands "so used as a permissive right of way as aforesaid," and to be filled with boiling water, raising a duty to place gates or barriers around the ditch or to place lights or signals to warn travelers "who might have occasion to pass over said permissive way" of the existence of the ditch. Neglect to perform this duty is averred, and that plaintiff, nine years of age,

who had been accustomed to use and travel "this permissive right of way," in ignorance of the existence of the ditch and while exercising due care and " while traveling over said route," in the night-time, fell into the ditch and was burned by the hot water.

It was not claimed in the opening statement of counsel for plaintiff, or attempted to be proved, that "a permissive right of way, a regularly traveled route, over which the general public in vehicles and on foot, night and day, was accustomed to pass and repass," existed at or near the place where the child was injured, or that the child in traveling over the land upon the occasion in question was following or attempting to follow any path or way, permissive or other. On the contrary, at the trial, and here, her asserted right is predicated upon a condition of things described by her counsel in his opening as follows:

"The evidence will show that for about 15 years last past people have been passing and repassing over these lands in every direction at all hours of the day and night without any objection on the part of the owners of the same, nor without any objection on the part of anybody."

This alleged condition is again stated in the brief—

"The evidence further clearly shows that the defendant had knowledge of the fact—that the neighboring people and the general public, as well as little children of tender years, were accustomed to come upon said premises, and pass and repass over the same in various directions, and in various manners, according as their convenience might indicate, and that little children—including the plaintiff—were accustomed to come upon said premises to play and see things which seemed novel to them, and that the defendant had reasonable cause to believe that there existed a strong probability that such children would at any time come upon said premises, as well as the neighboring people and general public, and be exposed to danger."

It was a further theory of counsel for plaintiff that defendant's use of the premises in question was limited and was confined to various fractional portions of the whole,

under some parol arrangement with the owners or lessees thereof; that it was not exclusive of the right of others, including plaintiff, to go upon and pass over the premises; that defendant was a licensee with general license to enter upon said premises and use portions thereof as its business might require, but had no authority to exclude others from going upon and passing over those portions not actually appropriated to its use. These conditions being established, it was supposed to follow, as matter of law, that defendant had not the right to open a ditch at any point upon the land where members of the public might pass without giving proper notice of changed conditions. In other words, the argument made in this court is to the effect that the rule of *Corby* v. *Hill*, 4 C. B. (N. S.) 556, that neither the owner of property nor a third person is justified in obstructing, dangerously, a private way over which the public is accustomed to travel, shall be applied to the entire of the premises in question here. See, also, for a statement of the rule, Wharton on Negligence (2d Ed.), § 349. The trial judge having stated that if he regarded the proofs sufficient to sustain a verdict for plaintiff he should permit an amendment of the declaration to conform to the proofs, the objection of variance is not for our consideration. There are two reasons why the rule of *Corby* v. *Hill*, supra, and like cases, has no application. Defendant was not a mere licensee of the parts of the land which it actually occupied. Testimony was introduced tending to prove that defendant, as to the owners of the land, was lessee of the entire premises and at and before the time of the injury to plaintiff paid rent therefor. The trial judge said, in his charge to the jury:

" I take it that there is no question that the defendant in this case has the right to occupy this property. There is sufficient testimony going to show that it has used it for a long number of years for the purposes set forth and described in the declaration; using it for the general purpose of piling wood, dumping ashes and things like that."

Neither in requests to charge nor in the reasons given

for a new trial do we find the theory presented that defendant was a mere licensee. The errors assigned do not raise the question, and none of them is based upon the rulings admitting the testimony tending to prove defendant to be lessee of the land. As matter of practice, we should regard the finding made by the court to be conclusive.

But a description of the premises and of the use made of them by defendant and by the public is equally conclusive of the exclusive character of the occupancy by defendant and of the casual nature of the public use. The premises are not enclosed, lie directly west of and are used with defendant's power plant, are 300 feet in length north and south and 150 feet in width, abut upon the north, south, and west sides upon streets, upon two of which—the north and west—are sidewalks. They have been used by defendant for 15 years. A wagon road runs north and south through the land just west of the power house, branching as it approaches the south boundary. About 90 feet south of Pine street, and 98 feet west of the west wall of the power house, is a tank about 15 feet high, which had been in position for four or five years, connected with the power house by a pipe laid underground, conducting hot water and waste steam from heaters and the boilers. From the tank an open ditch runs west to and under the sidewalk, serving, it is assumed, as a channel for water which overflows the tank. The reason for constructing the tank was that some of the people of the neighborhood came to that point to get hot water and it was feared that some of them might be injured. Thereafter those who came to get hot water took it from the ditch at or near the sidewalk where the stream is so small that a dipper must be used. For 15 years the ashes from the power house have been distributed over the space west of the power house and west of the wagon road referred to, and they extended nearly to the sidewalk on the west. In the winter, cordwood is piled in the space lying south of the south line of the power house,

covering about one-half of the premises.  As it becomes dry, the wood is consumed in the plant and by October is all, or nearly all of it, gone.  Until more is drawn, the space is vacant except for the timbers upon which the wood is piled.  At the time of the plaintiff's injury, there was a pile of telephone poles 50 feet long near the sidewalk on the north side and about midway of the premises. Just west of the wagon road and north of the pipe line described was a considerable pile of slabs.  There were two parcels of level ground, one in the wood yard proper and one north of the tank, on which boys had sometimes played ball.  Plaintiff had at different times been upon and across the premises.  There was testimony tending to prove that there were some paths through the ground where the wood was piled, one near the sidewalk west of the tank, and that, to some extent and as the condition of the ground and the material upon it permitted, people had for many years crossed the premises as they pleased from the point at which they reached them to a convenient point of departure from them.

Two or three days prior to the day when the plaintiff was injured, for the purpose of repairing a defective pipe, defendant opened the trench or ditch in which it had been laid, from a point three feet or thereabouts easterly of the tank to the west line of the power house.  The ditch was about two feet wide, about two feet deep at the power house and three feet deep at the tank, and hot water flowed through it.  Barriers were placed where the ditch crossed the road.  No other barriers were erected. On the evening of October 28, 1904, plaintiff, in company with other girls, walked to the north on the sidewalk on the west side of the premises to or near railroad tracks, upon which a steam shovel used in excavating and loading ore was standing.  It was a dark night.  Some of the girls thought, or suspected, there was a man in the steam shovel, and, becoming frightened, they ran for their respective homes.  Plaintiff lived on Oak street about south of the east side of the power house.  She left the side-

walk, ran across the premises in question, fell into the open ditch, and was injured. She had no knowledge that the ditch had been opened.

It may happen, an instance is described in *Beck* v. *Carter*, 68 N. Y. 283, that an unoccupied lot in a public place is so exclusively, continuously, and generally used by the public, with the acquiescence of the owner, that as to him it is a highway and the rights of individual members of the public to be upon the premises is similar to their right to occupy the highway. This is not such a case. Defendant's occupancy and use of the land was visible and constant, and for purposes of its business was exclusive. No path or way is shown to have existed at or over the land where the ditch was opened. The experience of plaintiff was that she had been upon and across these premises and had not been driven off or denied the privilege. It does not appear that she ever traveled over them in a path or way or in a direction used by any one else, or that she twice pursued the same way herself. The use made by plaintiff of the premises was the use made by others of the public who passed over them, outside of the open, traveled ways. It cannot be said that plaintiff or the public had any right upon the premises. *Ryan* v. *Towar*, 128 Mich. 463, 465 (55 L. R. A. 310); *Hounsell* v. *Smyth*, 7 C. B. (N. S.) 731; *Clark* v. *Railroad Co.*, 113 Mich. 24. But assuming, as the trial judge did, that she belonged to the class known to the law as naked licensees, "about the least favored in the law of men who are not actual wrong-doers," Pollock on Torts, pp. 424, 425, her position, assuming further that she exercised proper care, is not improved, unless it should be said that defendant's conduct in opening the ditch and leaving it unguarded at the point where plaintiff fell into it was such a change in the condition of the premises, such creating of a new danger by its active conduct, as indicated a reckless and wanton disregard of the safety of plaintiff and others. Here again we come to the proposition that if in the conduct of its business it became nec-

essary to change the condition of the surface of its premises, defendant could change them in no place, in the 45,000 square feet occupied, without giving notice of such change. The rule, or exception to the rule, stated in *Felton* v. *Aubrey,* 74 Fed. 350, 20 C. C. A. 436, relied upon by counsel, see, also, *Green* v. *Railway Co.,* 110 Mich. 648, that—

"If with knowledge that such person will [or may] avail himself of the license, the owner actively change the situation by digging a pitfall, or opening a ditch, or obstructing dangerously the premises which he has reason to believe will be traversed by his licensee, sound morals would seem to demand that he should give reasonable warning of the danger,"

—is limited, and was substantially limited in application in *Beck* v. *Carter,* supra, to cases where the use is "definite, long, open and continuous." It does not appear that in opening and keeping open the ditch defendant was acting except from necessity. It was concealed only by the darkness of the night. The case is ruled, in principle, by *Reardon* v. *Thompson,* 149 Mass. 267, and against the contentions of appellant.

The judgment is affirmed.

BLAIR, MONTGOMERY, HOOKER, and MOORE, JJ., concurred.