BURNS v. UNION CARBIDE CO.

1. NEGLIGENCE—DANGEROUS CONDITION OF PREMISES—LICENSEES.
   Licensees, using a well-defined path openly and continuously, take only such risks as have existed during time of using it, but licensor who makes path more dangerous must give notice to licensees or guard the dangerous place so made.

2. SAME—CARBIDE COMPANY'S REFUSE PITS—LICENSEES.
   Evidence *held*, to show that path across land, used for dumping hot waste materials from carbide company's furnaces, had become a permissive way for pedestrians and that plaintiff's 12-year old decedent was a licensee and not a trespasser.

3. SAME—CARBIDE COMPANY'S REFUSE PITS—EVIDENCE—LICENSEES.
   Digging of pit and dumping hot refuse therein from defendant carbide company's furnaces in course of continuing manufacturing operations nearer than other like pits to path used by pedestrian licensees is insufficient alone to support a charge of negligence.
   WEADOCK, J., dissenting.

Appeal from Chippewa; Runnels (Herbert W.), J. Submitted October 12, 1933. (Docket No. 42, Calendar No. 37,375.) Decided December 29, 1933. Rehearing denied January 30, 1934.

Case by J. A. Burns, administrator of the estate of Catherine Burns, deceased, against Union Carbide Company, a corporation, for personal injuries, resulting in death of plaintiff's decedent, alleged to have been due to defendant's negligence. Verdict and judgment for plaintiff. Defendant appeals. Reversed, and judgment ordered entered for defendant.

*John W. Shine* (*Prentiss M. Brown,* of counsel), for plaintiff.

*Warner & Sullivan* (*Walter S. Foster,* of counsel), for defendant.

McDONALD, C. J.   This suit was brought to recover damages growing out of injuries resulting in the death of Catherine Burns, caused, it is alleged, by the negligence of the defendant.

The defendant owns and operates a plant in Sault Ste. Marie, Michigan, where it manufactures calcium carbide. In the process of manufacturing there remains a large amount of refuse matter, which is hauled in cars away from the plant and dumped in excavations on land owned and maintained by defendant for that purpose. This refuse is waste material from the use of coal, coke and limestone in the defendant's furnace. It is a mass of matter which when fresh from the plant is full of hidden fire and remains in that condition for several days after it is dumped.

A large quantity of the refuse is produced daily and for the purpose of hauling it to the place where it is to be deposited the defendant has built and maintains a railway track extending east and west across the dumping grounds. It is claimed by the plaintiff that for many years prior to the accident the public had continuously used the railroad bed as a permissive way for pedestrian travel; that there was a well-defined path over which the people were accustomed to walk; that its use for such purpose was known to the defendant and acquiesced in by it.

Catherine Burns, the decedent, was a girl 12 years of age at the time of the accident. In company with other children of about the same age she left her home in the afternoon of May 30, 1931, on a hike to Mission Creek about two miles away. In going and coming they used the path along the railroad bed. It is the claim of the plaintiff that shortly prior to that time the defendant had excavated a large pit very close to the rails of the track and the path which the public was accustomed to use; that into this pit it had dumped carloads of hot refuse; that as the plaintiff's decedent was walking on the path along this excavation the ground gave way and she fell into the refuse and was so severely burned that she died in a few days. It is the plaintiff's theory that at the time of the accident Catherine Burns was a licensee upon the defendant's property and was rightfully there subject, however, to the attendant risks; but that by digging the excavation so close to the pathway which the public customarily traveled and filling it with a dangerous substance, the defendant had created a new peril and by not guarding the dangerous place so created, or giving warning of its danger which was not obvious, it was

guilty of negligence, which was the proximate cause of the injury.

The defendant denied that the path had become a permissive way and contended that the plaintiff's decedent was a mere trespasser on its premises to whom it owed no duty, except to refrain from wanton and wilful acts that might cause her injury; that it made no changes in the condition of the premises by which dangers in the use of the pathway were increased; that it was under no duty to guard the path or to warn the people who used it; that it was not negligent; that decedent used the path at her own risk and that her injury was caused by negligently failing to observe the danger that was plainly obvious.

At the close of the proofs the defendant moved for a directed verdict. Decision was held until after verdict when it was renewed in a motion to enter a judgment for defendant notwithstanding the verdict. This motion was denied and a judgment for $15,000 was entered for the plaintiff. The defendant has appealed and seeks reversal because of alleged errors in the admission of evidence, in the charge of the court, in the refusal to direct a verdict and denial of a motion for a new trial.

It is first contended that no negligence on the part of the defendant was shown and the court should have directed a verdict in its favor.

Negligence of the defendant, if any, must rest on the claim that the path over which the plaintiff's decedent was walking at the time of the accident had become a permissive way for foot travel by long and continuous use by the public; or that the decedent was rightfully on the premises as a licensee and that the defendant changed the conditions so as to increase the peril of using the path without

giving any notice of the increased danger or guarding against it. On this theory the case was tried and submitted to the jury.

The applicable law is well stated by Mr. Justice STONE in *Morrison* v. *Carpenter,* 179 Mich. 207 (Ann. Cas. 1915 D, 319), as follows:

"If a licensee has been using a well-defined path openly and continuously, we think he takes only such risks as have existed during the time of using the same; but this does not extend to additional risks on said path made afterwards by the licensor, and without the knowledge of the licensee. In other words, if the licensee has been using a defined path for a length of time with the knowledge and permission of the licensor, then, if the licensor interferes with said path by making it more dangerous, he should give notice to the licensee, or guard the dangerous place so made. We think this doctrine is clearly recognized by this court in *Habina* v. *Twin City General Electric Co.,* 150 Mich. 41, at page 49 (13 L. R. A. [N. S.] 1126)."

Also, see, *Douglas* v. *Bergland,* 216 Mich. 380 (20 A. L. R. 197).

A careful reading of the record leaves no doubt that the path in question had become a permissive way for pedestrians and that at the time of the accident the plaintiff's decedent was not a trespasser but was rightfully on the premises as a licensee. It is conceded that the defendant did not guard the place and gave no warning of danger, so the only question is whether it changed the condition of the roadway and increased the danger in its use by excavating close up to the path and depositing dangerous material in the excavation.

On this question the court charged the jury as follows:

"If, however, you are able to find from the evidence in this case, by a preponderance of the evidence, that the defendant, just prior to the accident; that is, prior to May 30, 1931, by its acts created a new and dangerous condition not plain and apparent, it would then be the duty of the defendant to have properly guarded this new dangerous condition and give warning, even to trespassers and naked licensees, and its failure to do this would constitute negligence."

We agree with the defendant that there was no competent testimony to justify the submission of this question to the jury. There was no evidence of change immediately prior to the injury. The only definite testimony on this subject was given by John Petoskey, a witness for the plaintiff who had lived for seven years near the dumping ground and who testified:

"This is the only pit I have seen there, the one that they now use. I have not seen other pits dug in the carbide dump for the purpose of emptying cars. That is the only pit I have seen. They have used that for quite a while. They have been digging that one for quite a few years that I know of. I mean the pit the Burns girl fell into."

There is no other testimony of change which can be claimed to carry any probative value. That the refuse had been dumped there just prior to the accident is plain and there is evidence that the excavation into which the girl fell was nearer to the path than the other excavations but a charge of negligence cannot be based on that alone. Trenching and dumping of the refuse was a continuing and permanent performance essential to the defendant's business and created no new or different danger than that always existing. In view of the continuing con-

ditions as shown by the undisputed evidence, and the lack of competent evidence of a recent change, we are constrained to hold as a matter of law that there was no negligence on defendant's part and that the court erred in refusing to direct a verdict for the defendant or to enter a judgment *non obstante veredicto.*

The judgment is reversed and the cause remanded to the circuit court for the entry of a judgment in favor of the defendant. The defendant will have costs.

POTTER, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred with McDONALD, C. J.

WEADOCK, J. (*dissenting*). I dissent because defendant gave no notice of the increased danger to those using the pathway.