Markman, C.J. (dissenting).
 

 This case concerns an incident that occurred during a Christmas party hosted by defendants and attended by plaintiff. When plaintiff arrived, she went to place her purse for the evening in a small room adjoining the garage. Notwithstanding that the room was dark, plaintiff chose to proceed into the room without turning on the light switch that was immediately adjacent to the entryway. She then lost her balance and fell, injuring herself, when she set foot into the room, which was about 8 inches lower than the hallway. Can defendants be held liable in premises liability for plaintiff's injuries? I think not and believe this to be a long-settled matter of common law in this state. Accordingly, I respectfully dissent from this Court's order remanding to the Court of Appeals to address the issue of duty because I would instead conclude today that defendants owed no duty. Thus, I would reverse the judgment of the Court of Appeals and reinstate the trial court's grant of summary disposition in favor of defendants.
 

 I. FACTS AND HISTORY
 

 Plaintiff Susan Blackwell attended a December 2013 party at the home of defendants Dean and Debra Franchi. When plaintiff arrived, she was allegedly told by the latter that she could place her purse in a small room to the left, described as the "mudroom" by the parties. There was no light on in the mudroom, and according to plaintiff, the hallway that adjoined the mudroom was "dimly lit." However, there was a light switch immediately next to the entrance. There was an 8-inch step creating a drop-off into the mudroom. Plaintiff, however, in the belief that the mudroom was level with the hallway, walked directly into the mudroom, lost her balance and fell, suffering injuries. Plaintiff had made no effort to turn on the light beforehand or otherwise to check to be certain that it was safe to enter the mudroom.
 

 Plaintiff sued defendants on the basis of premises liability, alleging that defendants breached the duty owed to her as an invitee by failing to "inspect for hazards, dangers and improper conditions of the premises"; "warn[,] advise and instruct persons regarding potentially dangerous conditions on the premises"; and "provide safe, proper and adequate access and egress to the Plaintiff and others similarly situated[.]"
 
 [5]
 
 Defendants moved for summary disposition, and the trial court, Oakland Circuit Court Judge Colleen O'Brien, granted their motion, concluding at the outset that plaintiff was a licensee and not an invitee. The court then concluded that even if plaintiff was an invitee, defendants were still entitled to summary disposition because "reasonable minds could not differ that the alleged condition here was open and obvious. Moreover, there are no special aspects."
 

 Plaintiff appealed, arguing that she was instead an invitee and that the step was not open and obvious because the hallway floor and the mudroom floor appeared to be level under the lighting conditions confronted. According to plaintiff, defendants were negligent by failing to provide adequate lighting or to warn her that there was a step down into the mudroom. The
 Court of Appeals reversed and remanded to the trial court for further proceedings in an opinion authored by Judge SHAPIRO .
 
 Blackwell v. Franchi
 
 ,
 
 318 Mich. App. 573
 
 ,
 
 899 N.W.2d 415
 
 (2017). The appellate court reasoned that although the trial court had correctly concluded that plaintiff was a licensee,
 
 id
 
 . at 575-76, n. 2,
 
 899 N.W.2d 415
 
 , it nonetheless erred by granting summary disposition in favor of defendants because there was "a question of fact about whether an average user acting under the conditions existing when plaintiff approached the mud room would have been able to discover the drop-off upon casual inspection,"
 
 id
 
 . at 578,
 
 899 N.W.2d 415
 
 . "The determination of whether defendants had a duty to warn plaintiff of the drop-off depends on how the conflicting testimony regarding whether the drop-off was open and obvious is resolved."
 
 Id
 
 . at 579,
 
 899 N.W.2d 415
 
 .
 
 [6]
 

 Defendants sought leave to appeal in this Court, and we directed the Clerk to schedule oral argument on the application and the parties to address the following issue:
 

 [W]hether the appellants owed a duty to warn the appellee of the condition on the land at issue, given the general rule that "[a] landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved,"
 
 Stitt v. Holland Abundant Life Fellowship
 
 ,
 
 462 Mich. 591
 
 , 596,
 
 614 N.W.2d 88
 
 (2000). [
 
 Blackwell v. Franchi
 
 ,
 
 501 Mich. 903
 
 ,
 
 902 N.W.2d 595
 
 (2017) (second alteration in original).]
 

 II. STANDARD OF REVIEW
 

 This Court reviews de novo the grant or denial of summary disposition.
 
 Maiden v. Rozwood
 
 ,
 
 461 Mich. 109
 
 , 118,
 
 597 N.W.2d 817
 
 (1999). "Whether a defendant owes a particular plaintiff a duty is a question of law that this Court reviews de novo,"
 
 Bailey v. Schaaf
 
 ,
 
 494 Mich. 595
 
 , 603,
 
 835 N.W.2d 413
 
 (2013), and is "an issue solely for the court to decide,"
 
 Murdock v. Higgins
 
 ,
 
 454 Mich. 46
 
 , 53,
 
 559 N.W.2d 639
 
 (1997) (quotation marks and citation omitted).
 

 III. ANALYSIS
 

 "The starting point for any discussion of the rules governing premises liability law is establishing what duty a premises possessor owes to those who come onto his land."
 
 Hoffner v. Lanctoe
 
 ,
 
 492 Mich. 450
 
 , 460,
 
 821 N.W.2d 88
 
 (2012). "Michigan has recognized three common-law categories for persons who enter upon the land or premises of another: (1) trespasser, (2) licensee, or (3) invitee."
 
 Stitt v. Holland Abundant Life Fellowship
 
 ,
 
 462 Mich. 591
 
 , 596,
 
 614 N.W.2d 88
 
 (2000). In all cases, however, "both the possessors of land and those who come onto it [must] exercise common sense and prudent judgment when confronting hazards on the land."
 
 Hoffner
 
 ,
 
 492 Mich. at 459
 
 ,
 
 821 N.W.2d 88
 
 .
 

 "[T]he adult social guest is to be viewed as a licensee."
 
 Preston v. Sleziak
 
 ,
 
 383 Mich. 442
 
 , 453,
 
 175 N.W.2d 759
 
 (1970), overruled in part on other grounds by
 
 Stitt
 
 ,
 
 462 Mich. 591
 
 ,
 
 614 N.W.2d 88
 
 . Plaintiff,
 an adult social guest of defendants, was accordingly a licensee.
 

 "The explanation usually given by the courts for the classification of social guests as licensees is that there is a common understanding that the guest is expected to take the premises as the possessor himself uses them, and does not expect and is not entitled to expect that they will be prepared for his reception, or that precautions will be taken for his safety, in any manner in which the possessor does not prepare or take precautions for his own safety, or that of the members of his family." [
 
 Preston
 
 ,
 
 383 Mich. at 451
 
 ,
 
 175 N.W.2d 759
 
 , quoting 2 Restatement Torts, 2d, § 330, comment
 
 h
 
 , p. 175.]
 

 In
 
 Preston
 
 , this Court adopted § 342 of the Restatement in specifically setting forth the duty owed by a premises possessor to a licensee:
 

 A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
 

 (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
 

 (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
 

 (c) the licensees do not know or have reason to know of the condition and the risk involved. [
 
 Preston
 
 ,
 
 383 Mich. at 453
 
 ,
 
 175 N.W.2d 759
 
 (quotation marks omitted).]
 

 More recently, in
 
 Stitt
 
 , this Court explained that "[a] landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved."
 
 Stitt
 
 ,
 
 462 Mich. at 596
 
 ,
 
 614 N.W.2d 88
 
 . "The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit."
 
 Id
 
 .
 

 "Different floor levels in private and public buildings, connected by steps, are so common that the possibility of their presence is anticipated by prudent persons."
 
 Garret v. W.S. Butterfield Theatres, Inc.
 
 ,
 
 261 Mich. 262
 
 , 263,
 
 246 N.W. 57
 
 (1933). Generally, therefore, "steps and differing floor levels [are] not ordinarily actionable
 
 unless
 
 unique circumstances surrounding the area in issue made the situation unreasonably dangerous."
 
 Bertrand v. Alan Ford, Inc.
 
 ,
 
 449 Mich. 606
 
 , 614,
 
 537 N.W.2d 185
 
 (1995). "[W]here there is something unusual about the steps, because of their 'character, location, or surrounding conditions,' then the duty of the possessor of land to exercise reasonable care remains."
 
 Id
 
 . at 617,
 
 537 N.W.2d 185
 
 , quoting
 
 Garret
 
 ,
 
 261 Mich. at 263-264
 
 ,
 
 246 N.W. 57
 
 .
 

 Here, there was nothing at all unusual about the step itself from the hallway into the mudroom. By all indications, the step was of a normal size and was in an ordinary location-the entranceway from the hallway into the mudroom. Furthermore, while the step was allegedly concealed by darkness, there is nothing to suggest that defendants had reason to expect that plaintiff would not in a timely manner discover the step. There was a door-sized entrance point separating the hallway from the mudroom and common sense suggests that where two discrete areas of a home are separated by such an entranceway, it is a reasonable possibility that the floor levels may well be different. This is particularly true where such mudrooms, as is often the case, are adjacent to garages, because garages are often themselves not level with the home, rendering mudrooms a common transition point from the garage
 to the home.
 
 [7]
 
 A prudent person should anticipate the possibility that floor levels could well be different in such circumstances. Moreover, there was a
 
 light switch
 
 on the hallway wall next to the mudroom entrance, by which a prudent person could have easily illuminated the mudroom. In my judgment, a prudent person does not blindly walk into a dark room, especially one that may be at a different floor level, when there is available a simple means of illuminating the room.
 
 [8]
 
 Defendants had every right to expect that plaintiff was such a prudent person who would turn on the light and see the step, or at a minimum decline to walk into a darkened room without even the most cursory effort to determine whether it was safe to do so. That is, defendants had every right to expect that plaintiff would discover the step and avoid falling into the mudroom. See
 
 25 ALR2d 599
 
 , 600, § 2 (explaining that a social guest can recover from a social host for failure to warn of a defect in the premises only when the social host "knows the guest will not, in the exercise of reasonable care, discover and avoid for himself" the danger); Restatement, § 342, comment
 
 f
 
 , p 212 ("The possessor is entitled to expect that the licensee ... will be on the alert to discover conditions which involve risk to him. Indeed, it is not necessary that the condition be such as the licensee would discover by the use of his senses while upon the land."). Because defendants should not have expected that plaintiff would fail to discover the step, the "duty to warn" was not triggered and they cannot be held liable for her injuries.
 
 Preston
 
 ,
 
 383 Mich. at 453
 
 ,
 
 175 N.W.2d 759
 
 .
 
 [9]
 
 In ruling that plaintiff's claim could proceed to trial, the Court of Appeals rejected the argument that plaintiff's failure to turn on the light had any relevance to the question of duty: "Defendants ... argue that the drop-off, or height differential, was open and obvious because plaintiff could have turned on a light switch located at the entry to the mud room that would have illuminated the mud room. However, this argument goes to whether plaintiff was comparatively negligent; it does not affect duty."
 
 Blackwell
 
 ,
 
 318 Mich. App. at 578
 
 ,
 
 899 N.W.2d 415
 
 . This reasoning badly misses the mark. As an initial matter and as the trial court creditably recognized, the open and obvious danger doctrine applies to
 
 invitees
 
 , not to licensees.
 
 Hoffner
 
 ,
 
 492 Mich. at 460
 
 ,
 
 821 N.W.2d 88
 
 ("[A]n integral component of the duty owed to an
 
 invitee
 
 considers whether a defect is 'open and obvious.' ") (citation omitted; emphasis added);
 
 Allison v. AEW Capital Mgt, LLP
 
 ,
 
 481 Mich. 419
 
 , 425 n. 2,
 
 751 N.W.2d 8
 
 (2008) ("[A] premises owner has a duty to exercise reasonable care to protect
 
 an invitee
 
 from an unreasonable risk of harm caused by a dangerous condition on the premises, but not when the condition is 'open and obvious.' ") (citation omitted; emphasis added).
 
 [10]
 
 But even more importantly, the duty to warn owed by a premises
 possessor to licensees is only implicated when the premises possessor "should expect that they will not discover or realize the danger[.]"
 
 Preston
 
 ,
 
 383 Mich. at 453
 
 ,
 
 175 N.W.2d 759
 
 (quotation marks and citation omitted). Accordingly, a social host is entitled to expect that social guests reasonably will discover for themselves commonplace potential dangers on the land without the assistance of an affirmative warning. A social host, in my judgment, is entitled to expect that a social guest will not proceed blindly into a dark room but will instead use a light switch to illuminate a room and thereby discover potential dangers within that room.
 
 [11]
 
 Therefore, the reason why defendants cannot be held liable to plaintiff for her injuries is
 
 not
 
 that she failed to turn on the light before entering the mudroom. While her failure to do so is indeed a matter of comparative negligence, defendants cannot be held liable because they were entitled to expect that plaintiff would "be on the alert to discover conditions which involve[d] risk" to her. Restatement, § 342, comment
 
 f
 
 , p. 212.
 
 [12]
 

 In the end, "the common law is but the accumulated expressions of the various judicial tribunals in their efforts to ascertain what is right and just between individuals
 in respect to private disputes."
 
 Price v. High Pointe Oil Co., Inc.
 
 ,
 
 493 Mich. 238
 
 , 242,
 
 828 N.W.2d 660
 
 (2013) (quotation marks, citations, and brackets omitted). Accordingly, the common law simply reflects the practices and common sense of society. See, e.g.,
 
 Gildersleeve v. Hammond
 
 ,
 
 109 Mich. 431
 
 , 438,
 
 67 N.W. 519
 
 (1896) (explaining that "sound reason, common sense, and common honesty ... are the foundation of the common law"). And it is a simple fact that countless social gatherings in Michigan successfully function, and have from time immemorial, on the straightforward, unstated premise that social guests are reasonably aware that walking blindly into the dark, or otherwise acting in a careless manner, may result in injury. Therefore, my conclusion is not only compelled by common sense, but as a result it is also consistent with our common law.
 

 A contrary conclusion creating a
 
 legal
 
 obligation to warn social guests concerning the pitfalls of walking into dark rooms would hardly define the full extent of our decision. Instead, countless other legal obligations, limited only by the creativity and innovativeness of the bench and bar, would certainly be imposed upon homeowners. Would a host in directing a guest to her bathroom be legally obligated to provide a detailed warning, or otherwise supply a map of the bathroom, to the effect that a failure to turn on the light might cause the guest to run into a sink or bathtub? Would a host be legally obligated to explain to a guest why it is a poor idea to place her hand upon a stove being used to prepare dinner? And would a host be legally obligated to apprise guests of the assorted and sundry risks of dealing with cutlery, throw rugs, fireplaces, spilled drinks, stairways, and rickety chairs? If not, why are
 
 those
 
 legal obligations any different from the legal obligation to warn a guest about the risks of blindly confronting a darkened room?
 
 [13]
 
 It is in the nature of the common law that it
 
 reflect
 
 social customs and practices and not
 
 lead
 
 society in new directions
 that might be favored by the court. Having been presented in this case with nothing that would suggest an evolution or transformation in the customs and practices of the people concerning the social host/social guest relationship, I would be content to maintain and preserve the present common law of this state.
 

 IV. CONCLUSION
 

 I would reiterate today the principle of our common law that a social host may not be held liable for injuries suffered by a social guest from an allegedly dangerous condition of the land when the host had no reason to expect that the guest would reasonably fail to discover the condition. That is, hosts are not required to monitor or surveil their guests to ensure that they do not suffer injury from commonplace household conditions, conditions to which the hosts and their families themselves are ordinarily and routinely subject. Here, plaintiff was injured when she stepped into the darkened mudroom without turning on the light or otherwise ascertaining that it was safe to enter. In my judgment, the law should not hold defendants liable when they had no reason to expect that plaintiff-or any other guest-would fail to exercise their own reasonable precautions. Accordingly, I would reverse the judgment of the Court of Appeals and reinstate the trial court's grant of summary disposition in favor of defendants. Because this Court fails to do so today and instead remands to the Court of Appeals to address the issue of duty-the very issue that we instructed the parties to address in our order nearly nine months ago-I respectfully dissent. I would not further delay a decision by this Court, if it is ever now to come, by requiring the parties to traverse the appellate process a second time in what I view as a matter involving the straightforward application of the settled common law of this state.
 

 Zahra and Wilder, JJ., join the statement of Markman, C.J.
 

 Plaintiff also brought a claim on the basis of private nuisance, a claim dismissed by the trial court and not at issue here.
 

 Judge K. F. Kelly , dissenting, stated that she would have affirmed the trial court on the basis that "[p]laintiff should have realized the danger posed by entering a dark and unknown room."
 
 Id
 
 . at 582,
 
 899 N.W.2d 415
 
 (K. F. Kelly , J., dissenting). Judge Gleicher responded in a concurrence that "darkness may impair a plaintiff's visibility to the extent that an otherwise observable danger no longer qualifies as open and obvious" and "the record hints of no clues that would have raised a suspicion of a significant elevation differential before continuing ahead."
 
 Id
 
 . at 580, 582,
 
 899 N.W.2d 415
 
 ( Gleicher , J., concurring).
 

 The following deposition exchange between plaintiff's counsel and defendant Dean Franchi illustrates the parties' understanding of a "mudroom":
 

 Q
 
 . It's usually a room where, you know, you would take your shoes off or put your coat up or sometimes there's laundry in it and it leads to the garage?
 

 A
 
 . Yes.
 

 See
 
 Brusseau v. Selmo
 
 ,
 
 286 Mich. 171
 
 , 174,
 
 281 N.W. 580
 
 (1938) ("In the case at bar, plaintiff had notice of the darkened hallway. He could have had more light either by turning on the 'switch' or leaving the entrance door wide open, or by both. His failure to make use of appliances that would have lighted the stairway precludes his recovery."). Although
 
 Brusseau
 
 was decided on the basis of contributory negligence, I believe that it would today likely be resolved on the basis of duty. This is because
 
 Brusseau
 
 was decided when Michigan followed a scheme of contributory negligence and during that time, issues of duty in premises-liability cases were often cast as issues of such negligence.
 
 Bertrand
 
 ,
 
 449 Mich. at 614
 
 ,
 
 537 N.W.2d 185
 
 ("Before this Court adopted comparative negligence, the issue of openness and obviousness often arose as the affirmative defense of contributory negligence, which completely barred recovery."). Regardless of how
 
 Brusseau
 
 was resolved, that decision illustrates that this Court recognized decades ago that the law expects that people will avail themselves of easily available means of illuminating dark areas-e.g., an ordinarily placed light switch-and generally cannot recover for injuries suffered when they choose instead to proceed in the dark. This is merely a specific application of the overarching rule of premises liability that a premises possessor "is not under legal duty to prevent careless persons from hurting themselves."
 
 Garret
 
 ,
 
 261 Mich. at 264
 
 ,
 
 246 N.W. 57
 
 .
 

 To the extent that plaintiff alleges that defendants may be held liable for failure to affirmatively illuminate the mudroom, I disagree for the simple reason that "[t]he landowner owes no [affirmative legal] duty ... to make the premises safe for the licensee's visit."
 
 Stitt
 
 ,
 
 462 Mich. at 596
 
 ,
 
 614 N.W.2d 88
 
 . See also
 
 Brown v. Berles
 
 ,
 
 234 Mich. 353
 
 , 355-356,
 
 208 N.W. 461
 
 (1926) ("[M]ere want of a light in the stairway did not constitute negligence rendering defendant liable to one falling down the stairs. ... It is common in private homes, especially in the country, to have dark stairways to cellars and basements, and no one ever considered such a want of care.").
 

 Indeed, in addressing the open and obvious danger doctrine in leading cases such as
 
 Bertrand
 
 and
 
 Lugo
 
 , this Court cited §§ 343 and 343(A) of the Restatement.
 
 Bertrand
 
 ,
 
 449 Mich. at 610-611
 
 ,
 
 537 N.W.2d 185
 
 ;
 
 Lugo v. Ameritech Corp., Inc.
 
 ,
 
 464 Mich. 512
 
 , 516-517,
 
 629 N.W.2d 384
 
 (2001). Those two sections of the restatement are located in "Title E. Special Liability of Possessors of Land to Invitees." Restatement, p. 215 (capitalization altered). Thus, the Restatement recognizes that the open and obvious danger doctrine is limited to
 
 invitees
 
 . Although this Court's order suggests that the open and obvious danger doctrine applies to licensees and the concurrence is "puzzled" by my assertion to the contrary, neither the order nor the concurrence has cited any authority from this Court applying that doctrine to licensees. Indeed, if the open and obvious danger doctrine applies to licensees,
 
 I
 
 am puzzled as to why the authors of the Restatement chose to place discussion of that doctrine in a section of the Restatement that is devoted exclusively to the duty owed to invitees.
 

 Concluding that the open and obvious danger doctrine applies to licensees would create a conflict in our law. This is because part of the open and obvious danger doctrine is that a premises possessor owes an affirmative duty to alleviate the presence of certain unusual conditions of the land that have "special aspects."
 
 Hoffner
 
 ,
 
 492 Mich. at 462
 
 ,
 
 821 N.W.2d 88
 
 ("[T]his narrow 'special aspects' exception recognizes there could exist a condition that presents a risk of harm that is so unreasonably high that its presence is inexcusable, even in light of its open and obvious nature."). "[I]n resolving an issue regarding the open and obvious doctrine, the question is whether the
 
 condition of the premises
 
 at issue was open and obvious and, if so, whether there were special aspects of the situation that nevertheless made it unreasonably dangerous."
 
 Lugo
 
 ,
 
 464 Mich. at 523
 
 ,
 
 629 N.W.2d 384
 
 . But in
 
 Stitt
 
 , we explained that a premises possessor "owes
 
 no duty
 
 of inspection or affirmative care
 
 to make the premises safe
 
 for the licensee's visit."
 
 Stitt
 
 ,
 
 462 Mich. at 596
 
 ,
 
 614 N.W.2d 88
 
 (emphasis added). Thus, if the open and obvious danger doctrine applies to licensees, it would follow that a premises possessor would owe an affirmative duty to licensees to alleviate the presence of certain conditions of the land-those that possess "special aspects"-which would be contradictory to
 
 Stitt
 
 .
 

 That the open and obvious danger doctrine, which establishes one component of the duty owed by a premises possessor, is limited to invitees is important to recognize because there are several critical distinctions between the duty owed to invitees and the duty owed to licensees, and conflating the two would elevate the duty owed to licensees. For example, concerning invitees, a premises possessor is subject to liability if he or she " 'knows or
 
 by the exercise of reasonable care would discover
 
 the condition .... ' "
 
 Bertrand
 
 ,
 
 449 Mich. at 609
 
 ,
 
 537 N.W.2d 185
 
 , quoting Restatement, § 343, p. 215 (emphasis added). That is, a premises possessor owes an invitee a duty to affirmatively "inspect the premises" for dangerous conditions of the land.
 
 Stitt
 
 ,
 
 462 Mich. at 597
 
 ,
 
 614 N.W.2d 88
 
 . With regard to licensees, in contrast, a premises possessor must simply " 'know[ ] or [
 
 have
 
 ]
 
 reason to know
 
 of the condition ....' "
 
 Preston
 
 ,
 
 383 Mich. at 453
 
 ,
 
 175 N.W.2d 759
 
 , quoting Restatement, § 342, p. 210 (emphasis added). That is, with regard to licensees, a premises possessor must be aware of facts that would give him or her reason to know of a dangerous condition of the land; there is no duty to affirmatively inspect the premises. Restatement, § 342, comment
 
 d
 
 , p. 211 ("A possessor of land owes to a licensee no duty to prepare a safe place for the licensee's reception or to inspect the land to discover possible or even probable dangers."). Simply put, the law imposes a lesser duty on premises possessors, typically homeowners, who host social gatherings because "[t]he use of the premises is extended to [the licensee] merely as a personal favor to him." Restatement, § 330, comment
 
 h
 
 , p. 175. It is simply incompatible with the nature of that relationship that homeowners who show hospitality to a social guest thereby be burdened with a
 
 legal
 
 duty to scour their premises, and affirmatively rearrange their domestic living arrangements, in order to identify or alleviate any condition that might conceivably cause harm to those guests.
 

 Common sense suggests that there is a risk associated with entering an unfamiliar dark room. Thus, the darkness of the room here was a warning that an unknown condition, dangerous or not, might await a social guest, such as plaintiff, on the other side. Once again, a "[d]efendant is not under [a] legal duty to prevent careless persons from hurting themselves."
 
 Garret
 
 ,
 
 261 Mich. at 264
 
 ,
 
 246 N.W. 57
 
 . Defendants had the
 
 right
 
 to expect that plaintiff herself would recognize the risk of walking into an unfamiliar dark room. Accordingly, defendants were under no obligation to warn plaintiff of the step, and I find the concurrence's focus on comparative negligence not to be relevant in any way.
 

 Simply stated, in determining whether a duty is owed by the premises possessor to a licensee, a proper analysis includes whether the premises possessor should expect that the licensee will not discover or realize a danger. See
 
 Preston
 
 ,
 
 383 Mich. at 453
 
 ,
 
 175 N.W.2d 759
 
 . In other words, this analysis concerns the premises possessor's
 
 expectations
 
 of the licensee's conduct. The concurrence does not appear to disagree that premises possessors, such as defendants here, should have reasonably expected that a licensee, such as plaintiff, would turn on the light, but the concurrence proceeds to reason that the failure to turn on the light "may very well be relevant to apportioning damages under comparative negligence principles." I agree that plaintiff's failure to do so may well be relevant in a comparative-negligence analysis, but the concurrence does not explain
 
 why
 
 the presence of the light switch and defendants' reasonable expectations of plaintiff's conduct in relation to the light switch are not critical elements of the analysis of the
 
 threshold
 
 question of duty. "[T]he adoption of comparative negligence in this State has no effect on the basic duty a defendant owes to a plaintiff."
 
 Riddle v. McLouth Steel Prod Corp.
 
 ,
 
 440 Mich. 85
 
 , 99,
 
 485 N.W.2d 676
 
 (1992) (quotation marks and citation omitted).
 

 Our caselaw with respect to licensees has suggested that darkness simply cannot constitute a circumstance that "conceals" a danger. In
 
 Habina v. Twin City Gen Electric Co
 
 ,
 
 150 Mich. 41
 
 , 48-49,
 
 113 N.W. 586
 
 (1907), this Court ruled in favor of the defendant and against the plaintiff, assuming that she was a licensee, explaining that the condition of the land "was concealed only by the darkness of the night. The case is ruled, in principle, by [
 
 Reardon v. Thompson
 
 ,
 
 149 Mass. 267
 
 ,
 
 21 N.E. 369
 
 (1889) ], and against the contentions of [the plaintiff]." In
 
 Reardon
 
 , Justice Holmes, writing for the Supreme Judicial Court of Massachusetts, stated that "the general rule is that a licensee goes upon land at his own risk, and must take the premises as he finds them. An open hole, which is not concealed otherwise than by the darkness of night, is a danger which a licensee must avoid at his peril."
 
 Reardon
 
 ,
 
 149 Mass. at 267
 
 ,
 
 21 N.E. 369
 
 . Accordingly, under
 
 Habina
 
 , a licensor cannot be liable to a licensee in premises liability for a condition of the land that is "concealed only by the darkness of the night."
 
 Habina
 
 ,
 
 150 Mich. at 49
 
 ,
 
 113 N.W. 586
 
 . See also
 
 Erickson v. Soyars
 
 ,
 
 356 Mich. 64
 
 , 71,
 
 95 N.W.2d 844
 
 (1959) ("The court did not err in instructing the jury that if the hole could have been seen in daylight by any person making reasonable use of his normal faculties then failure to do so may constitute contributory negligence and the hole was not rendered a 'hidden peril' by reason of the darkness of night.").
 

 Courts of other states have similarly concluded that a premises possessor cannot be held liable for injuries suffered by a licensee because the condition of the land was "concealed" by darkness. See, e.g.,
 
 Fuchs v. Huether
 
 ,
 
 154 Mont. 11
 
 , 15,
 
 459 P.2d 689
 
 (1969) ("At the most it may be said that the step was concealed by darkness and since the licensee must take the premises as he or she finds them, the owner is not liable for a danger that is only concealed by the darkness of night and which is easily avoided by the exercise of ordinary caution."), abrogated on other grounds by
 
 Brown v. Demaree
 
 ,
 
 272 Mont. 479
 
 ,
 
 901 P.2d 567
 
 (1995) ;
 
 Elliman v. Gombar
 
 ,
 
 86 Ohio App. 352
 
 , 355,
 
 91 N.E.2d 801
 
 (1949) (" 'The duty which rests upon a licensee to take his license subject to its concomitant perils still exists when he passes along a path obscured by the darkness of night. Indeed, that darkness but accentuates his perils and risks and is a condition for which the licensor is in no wise responsible.' "), quoting
 
 Coleman v. Renesch
 
 ,
 
 18 Ohio App. 177
 
 , 180 (1923) ;
 
 Susquehanna Power Co. v. Jeffress
 
 ,
 
 159 Md. 465
 
 ,
 
 150 A. 788
 
 , 792 (1930) ("The only sound reason that the traveler could assign for his failure to see that the heavy superstructure and deck of the bridge were gone was the fog of a freezing winter night. Even if the plaintiff had been a licensee, the darkness would not have made the defendants responsible.");
 
 O'Donnell v. Electro-Motive Div. of Gen. Motors Corp.
 
 ,
 
 148 Ill. App. 3d 627
 
 , 635,
 
 102 Ill.Dec. 51
 
 ,
 
 499 N.E.2d 608
 
 (1986) ("[O]ur courts have repeatedly held that it is not willful and wanton misconduct for a landowner to fail to warn a licensee of a dangerous condition concealed only by darkness since such a danger is not considered hidden.");
 
 Free v. Furr
 
 ,
 
 140 Cal. App. 2d 378
 
 , 384,
 
 295 P.2d 134
 
 (1956) ("The fact that the darkness of the night increased the hazard involved in using the premises did not increase the licensee's rights or enlarge the licensor's duties with respect to the condition of the premises.").